## TURNER v. SAWYER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 70. Submitted November 6, 1893. — Decided December 11, 1893.

In a suit in equity to have T. declared a trustee, for the use of S., of an interest in a mine, and to compel a conveyance of the same to S., T. set up two sources of independent title in himself : (1) the purchase of a portion of the interest at an execution sale under a judgment in a suit in which process was not served upon S., no appearance entered for him, no judgment entered against him, and in which he was never in court; (2) proceedings under Rev. Stat. § 2324 by T. against S. as an alleged "co-owner" of the mine to compel him to contribute to the payment of the annual labor on the mine for the year 1884, by which proceeding it was claimed that the interest of S. in the mine became forfeited to T. At the time when the labor was done for which contribution was demanded, S. had not received the deed for his interest, and the sheriff's deed to T. of the interest which he claimed was not delivered until March, 1885. *Held,*

    (1) That T. acquired no interest in the share of S. in the mine by the sheriff's deed ;

    (2) That T. was not a coöwner in the mine with S. during the year 1884, within the meaning of the statute, which, as it provides for the forfeiture of the rights of a coöwner, should be construed strictly.

By the laws of Colorado, title to land sold under execution remains in the judgment debtor till the deed is executed.

Cotenants stand in a relation of mutual trust and confidence towards each other, and a purchase by one of an outstanding title or incumbrance, for his own benefit, inures to the benefit of all, and when acquired, is held by him in trust for the true owner.

The general rule laid down in *Garland* v. *Wynn*, 20 How. 6, following in principle *Comegys* v. *Vasse*, 1 Pet. 193, 212, and maintained in *Monroe Cattle Co.* v. *Becker*, 147 U. S. 47, 57, that where several parties set up conflicting claims to property, with which a special tribunal may deal, as between one party and the government, regardless of the rights of others, the latter may come into the ordinary courts of justice, and litigate their conflicting claims, is announced to be the settled doctrine of this court.

THIS was a bill in equity filed by the appellee Sawyer against Robert Turner, George E. McClelland, and J. S.

Allison, the purpose of which was to have the defendant Turner declared a trustee for the use of the plaintiff of an undivided five-eighths interest in what was known as the " Wallace lode," which had been previously patented by the government to Turner, and to compel a conveyance of the same to the plaintiff.

The case was submitted upon an agreed statement of facts, which was substantially as follows: The Wallace lode, so called, was discovered and located by John Clark on September 20, 1878. On August 12, 1882, Clark conveyed an undivided three-fourths of this lode to Amos Sawyer and Marcus Finch. On May 1, 1882, Clark conveyed the other one-fourth interest to William Hunter, but the deed was never recorded, the parties supposing it to be lost, and on October 25 he made another deed to Hunter, which contained a recital that it was made to supply the place of the other. On October 26, 1882, Amos Sawyer and Marcus Finch reconveyed the undivided one-half of the lode to John Clark. On January 8, 1883, Marcus Finch conveyed an undivided one-eighth to Alice E. Finch. On March 16, 1883, Clark and Hunter conveyed three-fourths of the Wallace lode to Amos Sawyer and John S. Sanderson.

At this time, then, the lode was owned as follows: Amos Sawyer, one-half or four-eighths; John S. Sanderson, three-eighths; Alice E. Finch, one-eighth.

It so remained from March 16, 1883, to January 12, 1885, when Amos Sawyer assumed to convey his undivided one-half interest to Alfred A. K. Sawyer, who also became possessed of the one-eighth interest of Alice E. Finch, November 3, 1886.

The controversy arose over a lien filed August 14, 1883, by one John F. Teal for annual labor done upon the lode at the request of John S. Sanderson and Amos Sawyer. Teal claimed a lien for the sum of $148.10, and filed notice thereof in the recorder's office of Clear Creek County. One Charles Christianson also filed a similar notice, claiming a lien for $227.95. On January 12, 1884, Teal instituted a suit in the county court of Clear Creek County to enforce his lien, and

made John S. Sanderson, Marcus Finch, P. F. Smith, and——
Sawyer defendants as the owners thereof. There was no
service upon Sawyer, and he was not in court. On June 2,
1884, Teal proceeded to sell the interest of John S. Sanderson,
Marcus Finch, and P. F. Smith to pay the amount of his
decree, at which sale A. K. White became the purchaser,
took his certificate of purchase from the sheriff, and sold and
assigned it to Turner, who obtained a sheriff's deed on March
3, 1885. This deed purported to convey the whole Wallace
lode. Christianson instituted a suit against the same defen-
dants, as in the Teal suit, which was pending at the time,
to enforce his lien against the same.

On April 24, 1885, Turner, who had done the annual labor
on the claim for the year 1884, before he obtained a sheriff's
deed, published a forfeiture notice against the appellee
Sawyer under Rev. Stat. § 2324, but no forfeiture notice was
published against Alice E. Finch, who still owned an undivided
one-eighth of the lode, nor against Amos Sawyer, who owned
one-half of the lode during the year 1884, and until January
12, 1885, as above stated. Appellant Turner declined an
offer made January 18, 1885, to pay five-eighths of the $100
for the annual labor of 1884 on behalf of Alice E. Finch and
Amos Sawyer, on the ground that the records showed only
Sanderson and Sawyer as having any remaining interest. On
October 27, 1885, Turner filed in the office of the clerk and
recorder of Clear Creek County an affidavit that Alfred A. K.
Sawyer, the appellee, had wholly failed to comply with the
demands contained in the forfeiture notice. Subsequently,
and about November 1, Turner instituted proceedings in the
United States land office at Central City, Colorado, for the
purpose of procuring a patent for the lode in his own name,
and on April 13, 1886, a receiver's receipt was issued to him
by the receiver of the land office, acknowledging payment
in full for the entire lode, and on April 20 he conveyed an
undivided one-fourth interest to George E. McClelland by
deed recorded December 6, 1886, and another undivided
one-quarter to J. S. Allison by deed recorded May 19, 1886.

On March 17, 1887, the appellee Sawyer filed this bill, charg-

ing the patent to have been procured by the appellant Turner by false and fraudulent representations as to ownership, and praying that the title to an undivided five-eighths of the lode be deemed to belong to the appellee, and that Turner convey the same to him.

Upon the hearing in the court below, it was found that, at the time Turner applied for the patent and received the receipt therefor, he was not the legal owner of an undivided five-eighths of such lode, and it was decreed that he convey the same to the appellee Sawyer, and the other defendants were enjoined from interfering.

From this decree an appeal was taken to this court by Turner and McClelland.

*Mr. L. C. Rockwell* and *Mr. A. D. Bullis* for appellants.

When the entry was made in the Land Office, Sawyer had no interest in the Wallace lode.

Neither the complainant nor his grantors having filed an adverse claim to Turner's application for a patent, their rights became extinguished on the issuing and delivery of the patent to Turner.

Section 2324 of the Revised Statutes says: "Upon the failure of any one of several coöwners to contribute his proportion of the expenditures required hereby, the coöwners who have performed the labor or made the improvements may give such delinquent coöwners personal notice in writing or notice by publication."

Amos Sawyer was complainant's immediate grantor and coöwner in the Wallace lode with Sanderson when Turner did the annual labor in 1884.

It must be taken as a fact that Turner was there in support of and not in hostility to the rights of complainant or Sanderson in that lode, and while it may be urged with more or less force, that as between the judgment debtor, Sanderson, and Turner, the assignee of the judgment creditor, the latter had no legal right to the ground until after the expiration of the time of redemption, yet Sawyer cannot com-

plain at what Turner did. It must be immaterial to him whether Sanderson or Turner did the annual labor for 1884; that was a charge upon the property which had to be met or else the title became forfeited, and the lode subject to be relocated on the first day of the succeeding year.

It is as incumbent upon one cotenant to antagonize his cotenant's application for patent as though no such relation existed. Upon that point we are sustained by the express provision of the law, as well as the construction of it by the Land Department of the government. Rev. Stat. §§ 2324, 2325; *Smelting Co.* v. *Kemp*, 104 U. S. 636; *Bissell* v. *Foss*, 114 U. S. 252; *Smiley* v. *Dixon*, 1 Penn. 439; *Henshaw* v. *Bissell*, 18 Wall. 255.

The Commissioner of the General Land Office held that, as no evidence had been submitted showing in what manner the notice of forfeiture was served upon the delinquent coöwners, or that the delinquent coöwners did not in the required time pay their proportionate share of the annual expenditures, the company must show, before issue of patent, the manner of serving the notice and that the delinquent coöwners did not pay their said proportion.

The learned Secretary said: "Section 2324 of Rev. Stat. must be construed in connection with section 2325. Both have reference to the possessory title of an applicant for patent and the mode of acquiring patent; the latter providing that if no adverse claim is filed during the period of publication, it shall be assumed that none exists. It would, therefore, seem immaterial, after proceedings under section 2325, whether or not the requirements of section 2324 are complied with to the extent named in your decision; because, if parties have not been properly notified, or have paid their share of assessment work, they must still file their adverse claim under the proceedings contemplated in section 2324. *They waive their rights by failure to file such claim,* and upon such failure the law not only assumes that no such claim exists, but if the antecedent publication and attendant proceedings have been regular, all that might be set up by suit, in court has been adjudicated in favor of the applicant."

This decision is borne out by the reason upon which the law is based. It is, that everybody having adverse interests to the applicant must antagonize his claim, or their rights will be gone. *Roberts* v. *Thorn*, 25 Texas, 728; *Frentz* v. *Klotsch*, 28 Wisconsin, 312; *Wright* v. *Sperry*, 20 Wisconsin, 331; *Brittin* v. *Handy*, 20 Arkansas, 381; *Matthews* v. *Bliss*, 22 Pick. 48.

*Mr. Frederick D. McKenney*, *Mr. Edward Lane*, and *Mr. Sidney H. Dent* for appellee.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The real question in this case is whether the title to the half interest which Amos Sawyer assumed to convey to the appellee, Alfred A. K. Sawyer, January 12, 1885, was obtained by Turner through the proceedings taken by Teal in the enforcement of his lien for labor done upon this lode, or by the forfeiture notice published for the annual labor done in 1884.

(1) It is evident that nothing can be claimed by virtue of the suit begun by Teal, January 12, 1884, against John S. Sanderson, Marcus Finch, P. F. Smith, and —— Sawyer, as the owners of such lode, to enforce his lien, since there was no service upon Sawyer, no appearance entered for him, and he was never in court. Judgment was rendered in this suit against Sanderson, Smith, and Finch, the last two of whom appear to have had no interest in the property. Whether such proceedings were effective as against Sanderson, it is unnecessary to inquire. Not only was Sawyer not served in the suit, but in the execution sale no pretence was made of the sale of any interests except those of Sanderson, Smith, and Finch, which were struck off to A. K. White, and were subsequently sold by him, to Turner, to whom the sheriff's deed was given March 3, 1885.

(2) It remains then to consider whether Turner acquired such interest by the publication of his forfeiture notice against

Sawyer for the annual labor of 1884. This notice was as follows:

"To A. A. K. Sawyer, residence unknown:

"You are hereby notified that I have performed the annual labor required by law for the year 1884 upon the Wallace lode, situated in Cascade mining district, Clear Creek County, Colorado, and that unless within the time prescribed by law you pay your proportionate amount of said expenditure your interest in said lode will be forfeited to me under the provisions of section 2324 of the Revised Statutes of the United States.

"ROBERT TURNER."

This notice was published pursuant to Rev. Stat. § 2324, which enacts, that "upon the failure of any one of several coöwners to contribute his proportion of the expenditures required hereby, the coöwners who have performed the labor or made the improvements may, at the expiration of the year, give such delinquent coöwner personal notice in writing or notice by publication in the newspaper published nearest the claim, for at least once a week for ninety days, and if at the expiration of ninety days after such notice in writing or by publication such delinquent should fail or refuse to contribute his proportion of the expenditure required by this section, his interest in the claim shall become the property of his coöwners, who have made the required expenditures."

It will be observed that the right to give this notice of a claim for contribution is limited to a *coöwner* who has performed the labor. Turner was not a coöwner with Sawyer at any time during 1884, as Alfred A. K. Sawyer did not receive his deed from Amos Sawyer until January 12, 1885, and Turner did not receive his deed from the sheriff until March 3, 1885. He did, however, hold an inchoate title by virtue of White's purchase at the execution sale of June 2, 1884, and the subsequent assignment, August 25, 1884, of the sheriff's certificate to him. He appears also to have obtained the assignment of certain other judgments which had been re-

covered by William Hunter against Sanderson and Smith. These judgments were assigned to him August 27, 1884, sales made under them January 12, 1885, and certificates of sale issued to Turner, who thus became the purchaser under these judgments. Neither of these, however, made him a coöwner during the year 1884 within the meaning of the statute, which, providing as it does for the forfeiture of the rights of a co-öwner, should be strictly construed. Indeed, by the laws of Colorado title to land sold under execution remains in the judgment debtor until the deed is executed. *Hayes* v. *N. Y. Mining Co.*, 2 Colorado, 273, 277; *Laffey* v. *Chapman*, 9 Colorado, 304; *Manning* v. *Strehlow*, 11 Colorado, 451, 457.

This accords with cases from other States, which hold that the estate of the defendant in execution is not divested by a seizure and sale of his lands, but only by a payment of the purchase money and delivery of a deed. The sheriff's certificate is necessary as written evidence to satisfy the statute of frauds and to identify the holder as the person ultimately entitled to the deed, but it does not pass the title to the land nor constitute the purchaser the owner thereof. *Catlin* v. *Jackson*, 8 Johns. 520; *Gorham* v. *Wing*, 10 Michigan, 486, 493; *Green* v. *Burke*, 23 Wend. 490, 498; *Hawley* v. *Cramer*, 4 Cow. 717, 725.

It seems, however, that Turner, soon after the making and filing by him of an affidavit of non-payment by Sawyer of his alleged proportion of his claim for labor, instituted proceedings in the land office at Central City for the purpose of procuring a patent for this lode to be issued to himself alone, and prosecuted such proceedings so far as to obtain on April 13, 1886, a receiver's receipt so called, issued from the land office and delivered to him. This receipt was recorded in the recorder's office of Clear Creek County, Colorado, and on April 20, Turner conveyed to appellants Allison and McClelland each an undivided one-quarter interest in the lode. Whether he procured such receiver's receipt by fraudulent and false representations, as charged in the bill, it is unnecessary to determine. It is clear, to put upon it the construction most favorable to him, that he acted under a misapprehension of

his legal rights. There is nothing in the record showing that he ever became possessed of Sawyer's interest in the lode. Assuming that, under the proceedings in the Teal suit, he had acquired the legal title to Sanderson's interest, he became merely a tenant in common with Sawyer, and his subsequent acquisition of the legal title from the land office inured to the benefit of his cotenants as well as himself. It is well settled that cotenants stand in a certain relation to each other of mutual trust and confidence; that neither will be permitted to act in hostility to the other in reference to the joint estate; and that a distinct title acquired by one will inure to the benefit of all. A relaxation of this rule has been sometimes admitted in certain cases of tenants in common who claim under different conveyances and through different grantors. However that may be, such cases have no application to the one under consideration, wherein a tenant in common proceeds surreptitiously, in disregard of the rights of his cotenants, to acquire a title to which he must have known, if he had made a careful examination of the facts, he had no shadow of right. We think the general rule, as stated in *Bissell* v. *Foss*, 114 U. S. 252, 259, should apply; that "such a purchase" (of an outstanding title or incumbrance upon the joint estate for the benefit of one tenant in common) "inures to the benefit of all, because there is an obligation between them, arising from their joint claim and community of interest; that one of them shall not affect the claim to the prejudice of the others. *Rothwell* v. *Dewees*, 2 Black, 613; *Van Horne* v. *Fonda*, 5 Johns. Ch. 388; *Lloyd* v. *Lynch*, 28 Penn. St. 419; *Downer* v. *Smith*, 38 Vermont, 464."

A title thus acquired, the patentee holds in trust for the true owner, and this court has repeatedly held that a bill in equity will lie to enforce such trust. *Johnson* v. *Towsley*, 13 Wall. 72; *Moore* v. *Robbins*, 96 U. S. 530; *Marquez* v. *Frisbie*, 101 U. S. 473; *Rector* v. *Gibbon*, 111 U. S. 276, 291; *Monroe Cattle Co.* v. *Becker*, 147 U. S. 47.

It is contended, however, that Sawyer is precluded from maintaining this bill by the fact that he filed no adverse claim to the lode in question under Rev. Stat. § 2325. This section

declares that "if no adverse claim shall have been filed with the register and receiver of the proper land office at the expiration of the sixty days of publication" of notice of application for patent, "it shall be assumed that the applicant is entitled to a patent, upon the payment to the proper officer of five dollars per acre, and that no adverse claim exists; and thereafter no objection from third parties to the issuance of a patent shall be heard, except it be shown that the applicant has failed to comply with the terms of this chapter." By § 2326, "where an adverse claim is filed during the period of publication, it shall be upon oath of the person or persons making the same, and shall show the nature, boundaries, and extent of such adverse claim," etc. In this case there was no conflict between different locators of the same land, and no contest with regard to boundaries or extent of claim, such as seems to be contemplated in these provisions. Turner did not claim a prior location of the same lode, and made no objection to the boundaries or extent of Sawyer's claim, but asserted that he had acquired Sawyer's title by legal proceedings. The propriety of such claim was not a question which seems to have been contemplated in requiring the "adversing" of hostile claims. In this particular the case of *Garland* v. *Wynn*, 20 How. 6, is in point. In that case it was held that where the register and receiver of public lands had been imposed upon by *ex parte* affidavits, and a patent has been obtained by one having no interest secured to him in virtue of the preëmption laws, to the destruction of another's right who had a preference of entry, which he preferred and exerted in due form, but which right was defeated by false swearing and fraudulent contrivance brought about by him to whom the patent was awarded, that the jurisdiction of the courts of justice was not ousted by the regulations of the Commissioner of the General Land Office. "The general rule is," says Mr. Justice Catron, "that where several parties set up conflicting claims to property, with which a special tribunal may deal, as between one party and the government, regardless of the rights of others, the latter may come into the ordinary courts of justice and litigate the conflicting claim." Such was the case of *Comegys* v. *Vasse*, 1 Pet. 193,

212, and the case before us belongs to the same class of *ex parte* proceedings; nor do the regulations of the Commissioner of the General Land Office, whereby a party may be held to prove his better claim to enter, oust the jurisdiction of the courts of justice. We announce this to be the settled doctrine of this court. See also *Monroe Cattle Co.* v. *Becker*, 147 U. S. 47, 57, and cases cited.

The judgment of the court below was right, and it is, therefore, *Affirmed.*