STEWART et al. v. WESTLAKE et al.*

(Circuit Court of Appeals, Eighth Circuit. October 6, 1906.)

No. 2,326.

1. MINES AND MINERALS—FRAUDULENT RELOCATION OF CLAIM BY LESSEE—SUIT TO ESTABLISH TRUST.

A lessee of a mining claim, who has contracted to do an amount of work thereon which would be a sufficient compliance with the legal requirements in respect of development, and also to notify the lessor of any intention to surrender or abandon the lease, cannot, upon failing to perform his obligations, secretly relocate the claim and so secure and hold for himself the title, and a patent obtained under such circumstances will be decreed to be held in trust for the lessor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Mines and Minerals, § 62.]

2. SAME.

Lessees of a mining claim, under a lease from an individual which bound them to do the work thereon required by law and to notify the lessor of any intention to abandon the tenancy, who, in violation of their contract, without notice to him allowed the work for a certain year to go undone, and on its expiration secretly relocated the claim for their own benefit in the name of a third person to whom a patent was subsequently issued, but who had in fact no interest in the claim, cannot avoid the consequences of their fraud, in a suit in equity by the heirs of the lessor to recover the claim, on the ground of the invalidity of the lease because the lessor had previously conveyed the title to the claim to a corporation, of which he was president and manager, with authority to make contracts in its name and of which he also owned all the stock when the lease was made.

---

*Rehearing denied February 18, 1907.

Appeal from the Circuit Court of the United States for the District of Colorado.

Clinton Reed (John A. Ewing, on the brief), for appellants.
M. B. Carpenter, for appellees.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. This was a suit by the Stewarts to secure a decree that defendants, Westlake, Cable, and Hendee, hold the patent to a mine as trustees for them upon the ground that their ancestor, John T. Stewart, whose heirs and devisees they are, was the owner and was deprived of his rights by fraud of defendants and a violation of the fiduciary relations existing between him and his agent and lessees. The trial court dismissed complainants' bill upon final hearing, and they have appealed.

It is undisputed that at one time John T. Stewart owned the mining claim, and that he conveyed it to an Iowa corporation, of which he was the president and general manager, with authority to make and sign all contracts for and in the name of the company. In his individual name, and whilst the title stood in the company, he executed a lease of the mine for a term of three years. This was in 1899. About a year later, with the consent of Stewart, the lease was assigned to and accepted by Westlake, Hendee, and one Campbell. Campbell afterwards dropped out, and he need not be further mentioned. Westlake and Hendee will henceforth be referred to as the lessees. When the lease was made, Stewart was the owner of all of the stock of his company, and continued so to be until his death, in 1901, when it passed to the complainants. The evidence shows that in the early morning of January 1, 1902, the lessees, Westlake and Hendee, relocated the claim in the name of defendant Cable. To use the local vernacular, they "jumped it." The excuse for this proceeding was that the requisite assessment work for the preceding year had not been done. One McGarry, a trusted agent of Stewart, was at the shafthouse on the claim during the night and knew what was about to transpire. Stewart lived in Iowa. The proof is convincing that McGarry connived with the lessees, and that it was understood between them that the relocation could not be made in their names because of their relations to Stewart. The lease required the lessees to do an amount of work in the development of the mine that would have fulfilled all legal requirements for the protection of Stewart's interests, and it also required them to notify him in writing of any purpose on their part to abandon the tenancy.

The defendants say that after his conveyance to the corporation Stewart had no title to the claim, the lease was void, there was no landlord, and therefore no responsibilities or duties were imposed upon them. In effect the contention is that, though the lease was still subsisting according to its terms, the fact that Stewart signed the lease, instead of the company in which the title stood, permitted them to ignore it, to violate the obligations they assumed, and to make such violation supply the opportunity for securing to themselves the title to the leased property. The contention is not tenable. While the lease was

executed by Stewart, the president, general manager, and sole stockholder of the company, in his own name, the circumstances were such that the company was in no position to repudiate it. It would have been estopped from doing so. It knew that its president and managing officer, having power to execute leases, had made one that contemplated the continued development of the mine and the expenditure of substantial sums of money by the lessees, and that these things, the work and the expenditure of money, were going on. Moreover, the company never questioned or assailed the act of Stewart. The lessees entered into possession by the authority of Stewart, and peacefully, without interference or objection from any one, operated the mine for a part of the term, when they conceived and put into execution the scheme complained of. Under such conditions a tenant will not be permitted to strike at his landlord with one hand, while he holds to his lease with the other.

The proof is also convincing that neither of the lessees ever notified Stewart, as the lease required, of an intention to surrender or abandon the tenancy. It is true that Westlake swore that the notice was given and produced a mutilated letter press book containing a copy of a letter to that effect. Charles T. Stewart, one of the complainants and a son of the lessor, testified that no such letter was ever received. He was then attending to all of the business of his father, who was in ill health. Hendee, the associate of Westlake, said no such notice was given, and his testimony is in harmony with the whole atmosphere of the case, for the proof is overwhelming that in the autumn of 1900 Westlake and Hendee conceived the scheme to relocate the mine for themselves, if the necessary work for 1901 was not done by Stewart or by some one else for his benefit. A notice to Stewart that they intended to abandon the lease and to repudiate their agreement to do the work for him would have put him on his guard and probably frustrated their plans. The secrecy with which it was thought necessary to move is disclosed by a letter from Westlake to one Borman, who had been let into the venture after the relocation in the name of Cable. Westlake wrote:

"I hope you will be home by time this reaches you as I wish to rush this through to patent while nothing interferes. * * * This is a matter which does not want to be spoken of outside of ourselves. * * * This is best time of the year as Rock Hill (on which the claim was) is covered with snow, and no one is liable to go up there and see what we are doing. After we get it through to patent that settles it for all time."

Honest men engaged in a transaction which they have a right to undertake have no need to move with so much stealth, or to shroud their actions with such secrecy.

In our opinion the evidence also clearly shows that, when the relocation was made in Cable's name, he was ignorant of it, and that after being informed he consented to its use as a cloak for the operations of the lessees. He was an acquaintance of Westlake and lived in Denver. The mining claim was at Leadville. His testimony was noticeably brief and unsatisfactory considering that he was the patentee of the property in controversy. Hendee disclosed the scheme in all its details and testified to matters of grave importance that called for

explicit denial from Cable if his position was a true one, but Cable made no denial. The letters written by Westlake to Hendee and to Borman while the claim was in progress towards the patent contain complete refutation of his contention that the relocation was with Cable's knowledge and consent, and that it and the patent afterwards issued were for Cable's benefit.

Our conclusions may be briefly summarized: When the lessees learned that the title to the claim was in the Iowa corporation, and not in their lessor, and that there had previously been neglect in the filing of the affidavits of work done to keep the claim alive, they concluded to abandon further development of the mine during the year 1901 as required by their lease and to secure the property for themselves if Stewart and his company did not have the necessary assessment work done by some one else. Doubtless this was thought to be a much cheaper way of acquiring the property than by paying $35,-000 for it according to the terms of the contract between them. Fearing the watchfulness of McGarry, the agent of Stewart, they took him in and promised him a tenth interest. They afterwards repudiated the promise because he refused to make an affidavit which they desired in connection with the relocation. The lessees were advised that they could not relocate the claim in their own names because of their relation to Stewart, and that McGarry could not do so for a similar reason. So Westlake furnished the name of Cable, who, after learning of it, complaisantly allowed them to continue. To secure funds for the work and proceedings preliminary to a patent, Westlake and Hendee sold Borman a fourth interest for $1,000. Borman paid half of the amount, but was unable to pay the remainder. Hendee also was unable to keep up his contributions, and Westlake himself was greatly in need of money. In all of the correspondence between these parties there is not a word indicating that Cable had any interest in the property, or that he ever contributed anything towards the cost of the necessary work or the expenses of the proceedings. Nor does Cable testify that he paid anything. Though the patent ran in the name of Cable, it was obtained and held, not for him, but for those who so violated their duty and obligation that a court of equity will not allow them to profit by their conduct.

The law of the case is well settled. A lessee of a mining claim who has contracted to do an amount of work thereon which would be a sufficient compliance with the legal requirements in respect of development, and also to notify the lessor of any intention to surrender or abandon the lease, cannot upon failing to perform his obligations secretly relocate the claim and so secure and hold for himself the title. A patent obtained under such circumstances will be decreed to be held in trust for the lessor. Turner v. Sawyer, 150 U. S. 578, 14 Sup. Ct. 192, 37 L. Ed. 1189; Lowry v. Mining Company, 179 U. S. 196, 21 Sup. Ct. 104, 45 L. Ed. 151.

The other contentions of the defendants do not require special mention. They are not tenable.

The decree of the Circuit Court is reversed, and the cause is remanded, with direction to enter a decree for the complainants.