NOWELL et al. v. McBRIDE et al. (ENDICOTT, Intervener).

(Circuit Court of Appeals, Ninth Circuit. June 8, 1908.)

No. 1,436.

1. SPECIFIC PERFORMANCE—GROUNDS—SUFFICIENCY OF BILL.
   A bill for specific performance filed on behalf of a corporation, which alleged a contract entered into by the corporation at a meeting of the stockholders for the purchase of certain mining claims from defendants, the payment of the consideration agreed upon, and that the records of the corporation, kept and under the control of certain of the defendants, were fraudulently altered so as to exclude from the contract the most valuable of the claims in fact offered by defendants and purchased, states a cause of action and will support a decree for specific performance by conveyance of such excluded claims.

2. SAME—FRAUDULENT ALTERATION OF CONTRACT—EVIDENCE TO ESTABLISH.
   Evidence considered in a suit for specific performance, and held to sustain the allegations of the bill that the records of a corporation setting forth the terms of a contract between the corporation and defendants were fraudulently altered in the interest of defendants.

**3. SAME—DEFENSES—LACHES.**

Whether equitable relief shall be barred for laches must depend largely upon the circumstances of each case, and in a suit for specific performance of a contract for the purchase of property mere delay in bringing suit is not necessarily conclusive against the right of recovery, where there has been no change in the value of the property, and especially where the defense is based upon records which were fraudulently altered by defendants, or those acting in their interest, and they stood in a relation of trust and confidence toward complainant, or where the right to bring the suit was vested in a receiver who was personally adversely interested.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, §§ 305–310.]

**4. SAME—ESTOPPEL.**

The failure to adverse an application by defendant for a patent to mining property did not estop a complainant from maintaining a suit for specific performance of a contract previously made by defendant to convey such property; the claim of complainant not being adverse to the patent, but under it to enforce a trust.

Appeal from the District Court of the United States for the First Division of the District of Alaska.

The appeal in this case is from a decree ordering the specific performance of a contract. The suit was begun on January 18, 1906. The property involved is a group of three mining claims situated near Berner's Bay, in Alaska, known as the "Johnson Group," and consisting of the Johnson, or Northern Light, the Northern Light Extension No. 1, or Emma, and the Northern Light Extension No. 2. The basis of the relief awarded was two contracts, one made between Thomas S. Nowell and Willis E. Nowell, on the one side, and Henry Endicott, on the other, and one made between the said Nowells and the Berner's Bay Mining & Milling Company. The appellee McBride is the receiver of the properties of that corporation, having succeeded F. D. Nowell and W. B. Hoggatt, who, as receivers, had begun the suit. Endicott filed a petition in intervention as a stockholder of the Berner's Bay Mining & Milling Company, which company will in this opinion be designated the "Berner's Bay Company." The appellants, besides the two Nowells, are the Nowell Mining & Milling Company, hereinafter designated the "Nowell Company," and the Alaska Nowell Gold Mining Company, to be hereinafter designated the "Alaska Nowell Company." On the issues raised upon the bill and the petition of intervention and the answers thereto the trial court, on consideration of the evidence, found the facts, in substance, as follows:

On December 15, 1897, Decker Bros., copartners in business, brought a suit against the Berner's Bay Company, the Seward Gold Mining Company, the Northern Belle Gold Mining Company, and the Ophir Gold Mining Company. Thereupon E. F. Cassel was appointed receiver of the properties of said corporation, the Berner's Bay Company. On February 12, 1898, he resigned, and F. D. Nowell became his successor. On January 3, 1906, W. B. Hoggatt was appointed as co-receiver with F. D. Nowell, and in the order appointing him the court directed that he superintend and direct the institution of a suit in the name of the receivers against the Alaska Nowell Company, the Nowell Company, Thomas S. Nowell, Willis E. Nowell, and the stockholders in said company or companies, for the recovery of the aforesaid Johnson Group of mines. The Berner's Bay Company was incorporated under the laws of Maine on October 20, 1892, with its principal place of business in Portland, Me. Its capital stock was $1,000,000, divided into 10,000 shares. Thomas S. Nowell was chosen its president, and thereafter during the transactions hereinafter referred to continued to act as such. Arthur L. Nowell, his son, was, at the organization, chosen first assistant treasurer and first assistant clerk, and continued to occupy those offices during the period covered by the transactions hereinafter referred to. Upon the organization of the company Willis E. Nowell received on November 14, 1892, $999,600 of the treasury stock, in consideration of the transfer to the corporation of certain mining claims

situated near Berner's Bay, in Alaska. Thereafter the Berner's Bay Company acquired other claims, and all of its property was operated under one management. On November 14, 1892, the Berner's Bay Company, in order to develop its property which it had bought with its capital stock, issued 200 bonds of $1,000 each, the payment of which was secured by a first mortgage on its property to the International Trust Company. During all of the times mentioned in the transactions hereinafter referred to, Thomas S. Nowell and Willis E. Nowell, his son, resided during the greater part of each year in Alaska, and in the vicinity of the Berner's Bay Company's mining property. They were the active promoters and had the management and control of the mining enterprises conducted by that company, and they spent large sums of money derived from the sale of the mortgage bonds in the development of the mining property.

Between the years 1892 and 1896 Thomas S. Nowell and Willis E. Nowell acquired by location and purchase 15 undeveloped lode mining claims in the vicinity of the claims belonging to the Berner's Bay Company, some of which were adjacent to the property of that company, and some were in such position as to be worked advantageously from the drifts and underground workings which that company had made. Three of the said mining claims so acquired by Thomas S. Nowell and Willis E. Nowell were the Johnson Group, above referred to.

During the month of June, 1896, Thomas S. Nowell owned 4,496 shares of the capital stock of the Berner's Bay Company, Willis E. Nowell owned 457 shares, and Arthur L. Nowell owned 96 shares thereof, and the said Thomas S., Willis E., and Arthur L. Nowell had the control of the capital stock of said company and acted together through one Wm. M. Payson and Arthur L. Nowell in the transactions of the meeting of June 24, 1896, hereinafter referred to.

During all the times hereinafter referred to, Willis E. Nowell owned and controlled 9,997 shares of the capital stock of the Nowell Company, and said Thomas S. Nowell owned and controlled 1 share thereof; the total capital stock of said company being 10,000 shares of the par value of $100 each. The Alaska Nowell Company had a capital stock of 50,000 shares of the par value of $100 each, of which Willis E. Nowell owned 49,996 shares.

On November 4, 1895, Willis E. Nowell became the owner of the mining claims known as the "Johnson Group," and was such owner on June 24, 1896. In the month of June, 1896, Thomas S. Nowell, on behalf of himself and Willis E. Nowell, represented to the stockholders, creditors, and persons interested in the said Berner's Bay Mining Company the advantage to that corporation of the acquisition of the adjacent and adjoining properties then owned by them in the vicinity of the property of the Berner's Bay Company; and the said Thomas S. Nowell represented to Henry Endicott, the intervener herein, who was a stockholder of the Berner's Bay Company, and to certain other stockholders of said corporation residing in Boston and in that vicinity, who were without personal knowledge of the physical situation and condition of the said property, that the said claims, and particularly the 3 claims known as the Johnson Group, were then known to be of great value, and represented that it would be of advantage to the Berner's Bay Company to acquire the same and to increase its capital stock for the purpose of purchasing the same, and to incur additional indebtedness for the prosecution and development thereof; and the said Thomas S. Nowell, on behalf of himself and Willis E. Nowell, represented to the said Endicott and said stockholders that they would sell to the Berner's Bay Company said 15 mining claims, including the Johnson Group, in consideration of the issuance to them of $1,500,000 of the capital stock of said corporation, and proposed that the said capital stock be increased by that amount, and an additional bonded indebtedness of $300,000 be incurred by said corporation, so that the proceeds arising therefrom might be used as a working capital to develop said mining property; and said Thomas S. Nowell, on behalf of himself and Willis E. Nowell, embodied such representations in a written offer, addressed to the said Endicott, bearing date June 3, 1896, in which it was stated, among other things, that "the Johnson mines which are known to be of great value and

beyond that twelve other claims which are all right in connection, and should be worked with the Berner's Bay present properties. I consider these properties that I should turn over to the company of certainly as great a value, if not more so, than the present holdings of the company. In fact I believe that the Johnson properties have more real value in the deposit than all of the present holdings of the Berner's Bay Co."

In said offer said Thomas S. Nowell further proposed to retire 46 outstanding bonds of the Berner's Bay Company, on which interest had accrued, and to purchase 292 shares of the capital stock then held by dissatisfied stockholders, all of the face value of $77,078.33, which he represented could be had for $47,948.33, provided the payment was made on or before June 15, 1896, and of that sum he offered to raise $20,000. Thereupon, prior to June 24th, said Endicott accepted said offer for himself and associates, and with the assent of Thomas S. Nowell purchased 41 of the 46 bonds described in the said offer, and paid therefor the sum of $42,736.58, and received his pro rata of the 292 shares of the stock so referred to in said proposal, and in so doing acted upon the promises and representations contained in the said offer of June 3, 1896, and relied upon the promises of Thomas S. Nowell and Willis E. Nowell to convey said 15 mining claims. Endicott executed a proxy in favor of Thomas S. Nowell, authorizing him to vote his stock at the meeting of the stockholders of the Berner's Bay Company to be held on Jnue 24, 1896, for the purpose of consummating the transaction proposed in said offer of June 3, 1896.

In pursuance of said offer, it was agreed that a meeting of the stockholders should be called to accept the same, and prior to June 24, 1896, Thomas S. Nowell gave notice of a stockholders' meeting to be called, wherein it was proposed to be determined whether the corporation should purchase the following 15 mining claims, to wit, Northern Light Extension No. 1, or Emma, Northern Light, or Johnson, Portsmouth, Seward Extension, Columbian East Extension, Bear Extension, Savage Extension, Lucky Boy, Columbian West Extension, Selkirk, Rustler, Alaska Maid, Ackropolis, Northern Star, Northern Light No. 2, and whether the capital stock of the Berner's Bay Company should be increased from $1,000,000 to $2,500,000 for the purpose of acquiring said claims, and whether the bonded indebtedness of said corporation should be increased from $200,000 to $500,000.

In pursuance of said notice, on June 24, 1896, a meeting of the stockholders was had in the city of Portland, Me., at which meeting it was voted to increase the capital stock to $2,500,000, and to deliver $1,500,000 to the said Thomas S. Nowell and Willis E. Nowell in accordance with their written offer, and to increase the bonded indebtedness to $500,000.

At said meeting Thomas S. Nowell caused to be submitted a written offer, addressed to the Berner's Bay Company, signed by himself and as agent for Willis E. Nowell, to sell, convey, or cause to be conveyed to the company the 15 mining claims named in the notice of call for the special meeting, for and in consideration of 15,000 shares of new stock of said corporation, of the par value of $100 each. That said corporation accepted said offer and paid said Thomas S. Nowell and Willis E. Nowell the proposed consideration therefor. That thereby the corporation purchased and became the equitable owner of the 3 mining claims known as the Johnson Group, to wit, the Northern Light, or Johnson, Northern Light Extension No. 1, or Emma, and Northern Light Extension No. 2, and has since continued and now is such equitable owner thereof, and said three claims constitute the consideration for the issuance of said corporate stock and the increase of said bonded indebtedness.

At some time subsequent to June 24, 1896, the corporate records of said company were so altered, changed, and falsely entered as to make it appear that in the transactions at the said meeting only the last 12 of the 15 mining claims so enumerated and set forth in said written offer and said notice of stockholders' meeting had been offered and transferred to the said corporation, and said group of claims known as the Johnson Group were wrongfully, fraudulently, and falsely made to appear on the records of said corporation as having been omitted from said offer and transfer by the wrongful and fraudulent insertion in a pretended offer of sale recorded

in the minutes of said stockholders' meeting of the words "Last twelve," and by the insertion in said minutes of a pretended false and simulated copy of an offer on the face of which appears other substantial changes both in form and substance of the said offer as originally presented and acted upon at said meeting, by which the true intent and meaning of the said transaction was wrongfully and fraudulently changed and altered so as to appear to transfer only 12 of the 15 claims, omitting the said Johnson Group. At the time that said alterations were made, and when said corporate records were falsely engrossed so as to apparently effect said change in said transaction, the books of said corporation were in the custody and control of Thomas S. Nowell and Arthur L. Nowell, at the general offices of said corporation in Boston, Mass., where the eastern business and financial transactions of said corporation were conducted. Thereafter, in pursuance of a scheme and conspiracy on the part of Thomas S. Nowell and Willis E. Nowell to defraud the said company, its creditors and stockholders, they, pretending to act under the false and fraudulent entries in said corporate books, failed and refused to convey to said company the said 3 claims known as the Johnson Group.

The said Thomas S. Nowell and Willis E. Nowell, although present in court at the trial, did not testify as to the alterations in the offer so introduced in evidence and, referred to in the last preceding finding, nor did they offer any explanation in regard thereto.

On October 10, 1899, Willis E. Nowell conveyed the Johnson Group of mining claims to the Nowell Company, but said conveyance was received by that company with full notice and knowledge of the rights and equities of the said Berner's Bay Company therein and thereto. In the year 1902 the said Nowell Company applied to the United States Land Office at Juneau for a patent to the said Johnson Group, and on November 10, 1903, obtained a patent thereto. Said proceedings in the United States Land Office were had ex parte and without notice to the Berner's Bay Company or to the receivers thereof, or to Endicott, the intervener, and the title so acquired by the Nowell Company was acquired with the full knowledge on its part of the rights and equities of the Berner's Bay Company.

On November 10, 1903, the Nowell Company conveyed to the Alaska Nowell Company all of its right, title, and interest in the said Johnson Group; but said conveyance was made to the latter company without consideration and with full knowledge on its part of the title rights and equities of the Berner's Bay Company. From February 12, 1898, until January 3, 1906, Frederick D. Nowell, the son of Thomas S. Nowell, was the sole receiver of the property and assets of the Berner's Bay Company, and was a stockholder and incorporator of the Alaska Nowell Company, and until shortly prior to the commencement of the present suit the failure of the appellants to convey the said Johnson Group and the facts in connection therewith were not reported to the District Court in which the receiver was appointed. On January 6, 1906, W. B. Hoggatt was appointed a co-receiver for the express purpose of commencing the present suit, and on account of the relation existing between said Frederick D. Nowell and the parties defendant.

Since June 24, 1896, Thomas S. Nowell, Willis E. Nowell, the Nowell Company, and the Alaska Nowell Company have held the legal title to said 3 mining claims known as the Johnson Group in trust for the use and benefit of the Berner's Bay Company, its stockholders and creditors.

On said findings the court decreed the conveyance of the property in controversy to the Berner's Bay Company.

George M. Nowell and Malony & Cobb, for appellants Willis E. Nowell and others.

L. P. Shackleford, T. R. Lyons, John J. Boyce, E. S. Pillsbury, and Alfred Sutro, for appellees.

Before GILBERT, Circuit Judge, and DE HAVEN and HUNT, District Judges.

GILBERT, Circuit Judge (after stating the facts as above). We are unable to agree with the contention of the appellants that the bill fails to state facts sufficient to sustain the decree of the court below. It alleges: That Thomas S. Nowell and Willis E. Nowell represented to the stockholders, creditors, and persons interested in the success of the Berner's Bay Company the advantage to that company of purchasing 15 certain mining claims, the title to which was represented to be in the said Thomas S. and Willis E. Nowell, and that they would sell the same to the company in consideration of $1,500,000 of the capital stock of said company, which they suggested should be increased in that amount for that purpose; and they further proposed that an additional bonded indebtedness of $300,000 be incurred by the corporation to provide a fund for working the company's mining properties; that in pursuance of that offer it was agreed that a special meeting of the stockholders of the company should be called to acquire said mining claims on the terms proposed, and Thomas S. Nowell caused a notice to be given that such a meeting would be held June 24, 1896, to consider the said proposal to sell the corporation the 15 mining claims, naming them and including therein the three claims in controversy in this suit, and to consider the increase of the capital stock of the company from $1,000,000 to $2,500,000, for the purpose of paying for said property and to increase the bonded indebtedness as suggested; that the meeting was held, and it was then and there voted to increase the stock as proposed, and to increase the bonded indebtedness and to deliver to Thomas S. Nowell and Willis E. Nowell the $1,500,000 of such increased capital, and as the purchase price for said mining claims the company issued to Thomas S. and Willis E. Nowell the said shares of capital stock; that the true intent and meaning of the proceedings of the stockholders' meeting was to sell to the company, with the other claims, the 3 claims constituting the Johnson Group, which were alleged to constitute the principal value of the 15 claims so offered; that after the date of said meeting, and after such sale, by the insertion in the offer of sale recorded in the minutes of the said stockholders' meeting of the words "last twelve," the true intent and meaning of the transaction was wrongfully and fraudulently changed and altered; and that during the times of the said transactions all books and records of the corporation were in the custody and control of Thomas S. Nowell and Arthur L. Nowell. No demurrer was interposed to the bill. It was accepted as sufficient by the appellants and by them answered, and no objection was interposed to the reception of testimony on the ground of the insufficiency of its allegations.

It is too late now to urge that the details of the alleged fraud should have been more particularly specified. The bill states the case of a proposal to sell certain specified property for a certain specified price, the acceptance of the proposal, the payment of the specified price, and the subsequent fraudulent alteration of records so as to indicate that the property which constituted the principal value of that which was so offered and purchased was excluded from the sale. Those allegations are, under the circumstances, sufficient to sustain the decree.

Nor is the bill insufficient, as suggested by the appellants, to show that the appellees were entitled to equitable relief, for the reason that it contains an allegation that Thomas S. and Willis E. Nowell subsequently acquired from the United States a patent to the mining claims so attempted to be withheld by them. According to the allegations of the bill, and as the facts were found by the trial court, the Berner's Bay Company, through the proceedings at the stockholders' meeting, became the equitable owner of the three mining claims in controversy. From that date Thomas S. and Willis E. Nowell and their successors in interest held the title in trust for the company, and as the patent thereafter obtained was likewise held by them and their successors in interest as trustees for the company, they were not in the adverse possession of said mining claims at any time before notice was brought home to the true owners thereof of their repudiation of the trust and their hostile assertion of title against them.

Equally without merit, in our judgment, is the appellants' contention that the record is without sufficient proof to sustain the finding of the trial court that the records were fraudulently altered, as alleged in the bill. There was but one call for the special meeting of the stockholders of the corporation. That call was signed by Thomas S. Nowell, as president, by Henry Endicott, as a stockholder, and by three others. It notified the stockholders of the proposal to purchase the mining claims so offered for sale, and it enumerated them in the following order: Northern Light No. 1, Johnson, Portsmouth, Seward Extension, Columbian East Extension, Bear Extension, Savage Extension, Lucky Boy, Columbian West Extension, Selkirk, Rustler, Alaska Maid, Ackropolis, Northern Star, Northern Light No. 2. In the books of the records of the stockholders' meeting so called on June 24, 1896, what purports to be a copy of the call of the special meeting is recorded. In that record a most significant change is found in the order of enumeration of the claims, the purchase of which was to be considered at said meeting. By the change so made the three claims in controversy are placed first in the list. At that meeting Thomas S. Nowell, who held the proxies of Henry Endicott and William Endicott, was not present in person; but he was represented by William S. Payson, who held his proxy and in whose handwriting the records are written. A. L. Nowell was also present. The capital stock of the company was increased in the sum of $1,500,-000. According to the record as it now appears, A. L. Nowell presented a written offer from Thomas S. Nowell, the recorded copy of which begins thus:

"To the Berner's Bay Mining and Milling Company, 30 Exchange Street, Portland, Me.—Gentlemen: I hereby offer on behalf of myself and Willis E. Nowell to sell or convey or cause to be conveyed to your said corporation the last twelve mines, mining claims and properties named in article 3 of the call for the special meeting of June 24, 1896, for the one million five hundred thousand shares of new stock of said corporation," etc.

The original offer, a copy of which so purports to be transcribed into the record, shows upon its face that it was originally drawn in conformity with the original agreement between Thomas S. Nowell

and Henry Endicott, and with the notice of the stockholders' meeting. As produced in evidence, however, it contained interlineations which had first been made in pencil and afterward written in ink. One of those interlineations very materially changed the purport of the instrument. It is the interlineation of the words "last twelve" in the line after the word "mines." As copied into the record, however, the words "last twelve" were inserted, not after the word "mines," but before it. This alteration of the original offer as it was accepted by Endicott, the intervener, and as it was proposed to the stockholders in the call for the special meeting, is in itself a very suspicious circumstance. Its effect is to leave out of the offer those claims which Thomas S. Nowell himself declared to be the only claims of the 15 offered for sale which were known to be of great value, and which had been openly offered for sale to the corporation in consideration of the stock which was issued to said Thomas S. and Willis E. Nowell. But more suspicious than the alteration of the written offer is the alteration in the record of the notice of the special meeting as the same is carried into the minutes. For what purpose was the list of the mining claims therein enumerated and offered for sale so shifted as to present the 3 claims now in controversy at the head of the group? Obviously it was for the purpose of making a record such that the original offer on which the stockholders acted and relied might be interlined and altered so as to leave out of the deal the 3 valuable claims constituting the Johnson Group. The alterations so made, under the circumstances, and in view of the fact that the records were in the hands of the Nowells, and the fact that none of the parties interested other than the Nowells and their clerk knew, as far as the evidence discloses, of the alterations at the time thereof, presents a case which called upon the appellants to make full and complete explanation. This they have wholly failed to make. They offer no explanation whatever. There is no testimony that the alterations were made prior to or at the time of the meeting, and it is shown that Thomas S. Nowell and Willis E. Nowell received the full amount of the consideration price for which they originally offered the 15 mining claims, including the 3 which they represented to constitute the chief value of the properties so offered.

Thomas S. Nowell, it is true, in his testimony, disclaimed all knowledge of the interlineations and alterations, and denied that any proposition was ever made at the stockholders' meeting to sell the 15 mining claims to the corporation; but he did not deny his letter to Endicott in which he proposed to sell the 15 mining claims to the company, including the 3 in controversy. Nor did he deny that he had signed the original notice calling the stockholders' meeting to consider the acquisition of those claims. Nor did he deny that six months after the stockholders' meeting he stated to Endicott that the reason why the claims in controversy had not been conveyed to the Berner's Bay Company was that a patent had not then been obtained for them—a reason which, we may here remark, does not appear to have been candid, for the want of a patent was no impediment to the conveyance of the claims, and in fact they were conveyed to the Nowell Company

in 1899, several years before the issuance of the patent. Nowell's testimony, so far from explaining the alterations in the record, is of such a nature, on the whole, as to cast additional suspicion upon that which arises from the condition of the records themselves. William Payson, who acted as the clerk and in whose handwriting the record is, was not called as a witness. Said the court, in Smith v. U. S., 2 Wall. 219, 17 L. Ed. 788:

"The general rule is that where any suspicion is raised as to the genuineness of an altered instrument, whether it be apparent upon inspection or is made so by extraneous evidence, the party producing the instrument and claiming under it is bound to remove the suspicion by accounting for the alteration."

The appellants earnestly insist that the laches of the appellees is such as to bar their right to equitable relief. It is not shown that the values of the mining properties in controversy have increased since the time when the contract for their sale was made. As to the delay of the intervener, Endicott, in asserting his rights, his testimony is that he did not discover the fraud until some six months after the stockholders' meeting, and that at that time, in a conversation with Thomas S. Nowell, the latter informed him that the reason why the mines had not been conveyed was "that they could not convey them for they had not procured the patent yet." Endicott testified, further, that thereafter he made search for Nowell's letter to him of June 3, 1896, concerning the proposed sale of the 15 mining claims to the company, but that he could not find it until 1900, and that thereafter Nowell was making endeavors to sell the Berner's Bay and Johnson property together, and that he (Endicott) was more anxious to realize on such deal than to delay the consummation of the same by litigation over the title of the Johnson properties. But he testified that on finding the letter he sent a copy thereof to Nowell and informed him "that we consider we have at least a moral claim on the Johnson property."

So far as the other appellee is concerned, it is sufficient to direct attention to the fact that, from the year 1898 until just prior to the commencement of this suit, F. D. Nowell, the son of Thomas S. Nowell, and a stockholder in the Alaska Nowell Company, was the sole receiver of the Berner's Bay Company. As such receiver, he was the proper person to institute a suit to enforce the trust against the appellants. Owing to his relation to the appellants and his own interest in the Alaska Nowell Company, he was unwilling to bring the suit. In the fall of 1905 a reorganization committee, which had become interested in the properties of the Berner's Bay Company on behalf of a large body of creditors, became possessed of knowledge of the nature of the transactions preceding and attending the stockholders' meeting of June 24, 1896, and caused a request to be served upon the receiver, F. D. Nowell, to bring suit to enforce the specific performance of the contract for the conveyance of the Johnson Group; but he refused to comply therewith. It was not until a co-receiver was appointed and an order of the court obtained requiring the receiver to institute a suit that the present suit was commenced. Whether equitable relief shall be barred

for laches must largely depend upon the circumstances of each case. Where there is no considerable change in the value of the property involved so as to make the relief equitable, the mere lapse of time, even for a period longer than that which intervened in the present case, is not necessarily conclusive against the right of relief. Especially is this so in a case such as the present, where trust and confidence were imposed by stockholders in the president of a corporation, who, with his relatives and subordinates, had the sole control and possession of the records of the company and fraudulently altered the same so as to evade the obligation on a contract made and entered into for the conveyance to the corporation of real estate, which in equity still belongs to it and is held in trust for it.

The appellants make the contention that the issuance of a patent from the United States to the Nowell Company for the mining claims in controversy was conclusive of the rights of all parties, including the Berner's Bay Company, and that the appellees waived all claim to said property by failing to adverse the Nowell Company's application for the patent. It is sufficient to say, in answer to this, that the appellees do not claim adversely to the patent, but under it. The purpose of the present suit is to establish and enforce a trust. The statute providing for adverse proceedings on an application for a patent, says Lindley, "have reference to an adverse claim arising from independent and conflicting locations of the same ground, and not to a controversy between co-owners or others claiming under the same location." Lindley on Mines (2d Ed.) 728; Turner v. Sawyer, 150 U. S. 578, 14 Sup. Ct. 192, 37 L. Ed. 1189; Stevens v. Grand Central Mining Co., 133 Fed. 28, 67 C. C. A. 284. In the fact that an application was made for a patent by the Nowells there was nothing to indicate to the Berner's Bay Company, or to any of its stockholders, that the intention was to acquire a title adverse to them. The declaration of Thomas S. Nowell to Endicott, made some six months after the stockholders' meeting, that the reason why the claims in controversy had not been transferred to the Berner's Bay Company was that a patent had not been obtained thereto, was not inconsistent with a purpose on the part of the Nowells to obtain a patent for the benefit of the company, and in furtherance of the original agreement to transfer the claims to the company.

We find no error for which the decree should be reversed.

It is, accordingly, affirmed.