**KLINE et al. v. WRIGHT et al. (RILEY et al., Interveners).**

No. 680.

District Court, D. Idaho, E. D.

July 16, 1930.

928

John H. Padgham, of Salmon, Idaho, and Richards & Haga, of Boise, Idaho, for plaintiffs.

. L. E. Glennon and E. W. Whitcomb, both of Salmon, Idaho, for defendants.

John H. Padgham, of Salmon, Idaho, J. J. Dwyer, of New York City, and Richards & Haga, of Boise, Idaho, for interveners.

CAVANAH, District Judge.

This case presents a controversy as to the ownership of certain mining claims in which plaintiffs and interveners assert to be entitled in accordance with their respective proportionate interests of an undivided $\frac{5}{21}$ interest in plaintiffs and $\frac{2}{3}$ interest in interveners.

At the outset the jurisdiction of the court is questioned by defendants, who urge that the mining claims in controversy do not exceed the value of $3,000 as required to confer jurisdiction.

The test is that the record must create a legal certainty of want of jurisdictional amount before the court would be warranted in holding that it did not have jurisdiction. Wetmore v. Rymer, 169 U. S. 115, 18 S. Ct. 293, 42 L. Ed. 682; Simkins Federal Practice, pp. 444–459. The present case involves the claims of an undivided $\frac{5}{21}$ interest of four plaintiffs in the claims, and interveners' claim is an undivided $\frac{2}{3}$ interest, which may be considered with plaintiffs' interest in testing the jurisdiction of the court as to the requisite amount. Clay v. Field, 138 U. S. 464, 11 S. Ct. 419, 34 L. Ed. 1044; McDaniel v. Traylor, 196 U. S. 415, 25 S. Ct. 369, 49 L. Ed. 533. In a case of this kind, where the character of the property is mining claims, the value of the property may be determined by what is shown as to certain ore veins extending through the premises, and also a speculative value. Butters v. Carney (C. C.) 127 F. 622; Woodside v. Ciceroni (C. C. A.) 93 F. 1. The history of these claims, as disclosed by the evidence, shows that they were located years ago, and considerable work was done on them for a long period of time, and considerable valuable ore was taken therefrom. They have veins of ore in sight, and

quite a large amount of underground workings along the veins. They have been under bond of sale at times, with the purchase price as high as $75,000. Experienced witnesses, engaged in mining, estimated in their opinion the value to be from $20,000 to $25,000 on a cash sale, and from $40,000 to $50,000 on a sale based on a term of years. According to the value so given by the weight of the evidence, the value of plaintiffs' interest alone would exceed the requisite jurisdictional amount, and the value of interveners' interest would bring the necessary amount greatly in excess of the amount required to give the court jurisdiction. The defendant Wright when he attempted to purchase the property from the administrator fixed the purchase price at $7,500, and then shortly thereafter gave a bond to Thompson for $15,000, and at another time gave a bond to the New York-Idaho Company for $75,000. The witness Wickham for the defendant gave as his opinion that he would not give more than $1,000 for the property, for he thought the ore had all been taken out. As to his opinion, it seems to be in conflict with that of the two witnesses for the plaintiff and the admission of the defendant Wright as to their estimate of value. So from the evidence, it clearly seems to be sufficient to show the requisite jurisdictional amount.

Plaintiffs' and interveners' interests in the property arise out of their claims as heirs of John Tormey, who owned the claims until his death in October, 1916. The defendant Wright, in August, 1918, took possession of the claims under a deed made pursuant to an order of the probate court in the Tormey Estate, which was thereafter, in November, 1923, held by the Supreme Court of the state (38 Idaho, 202, 226 P. 729) to be void as to plaintiffs and interveners, but valid as to the other heirs of the estate to an undivided 3/21 interest. The defendant Wright in September, 1920, conveyed an undivided 1/4 interest to W. L. Thompson, who in November, 1923, died, leaving surviving him his widow, Ella Thompson, and the defendants Geneva Rose, Florence Temple, and Harold Thompson, his children. In September, 1920, the defendant Wright also conveyed an undivided 1/4 interest to the defendant Sedgwich A. Matthews. The annual assessment work required to be performed on the claims for the year ending June 30, 1927, was not done, and the claims were relocated by the defendant Ford, who, within a short time thereafter, executed a deed to the defendant Wright for an undivided 9/10 interest, and about the same time Wright executed a deed to the defendant Ella Thompson for an undivided 9/40 interest. Prior to the relocation of the claims by Ford in July, 1927, Wright and the plaintiffs and interveners, without doubt, held the claims as tenants in common, as such interests were recognized by the Supreme Court of the state in the case of Kline v. Shoup, 38 Idaho, 202, 226 P. 729; Id., 38 Idaho, 480, 220 P. 45, and Riley and Crane v. Kline, 44 Idaho, 299, 256 P. 535.

Such relationship then existing, and not having been terminated, did the defendant Wright occupy a fiduciary relation of mutual trust and confidence with them as tenants in common, so that any title acquired by him and the grantees, under either the relocation or by conveyance from Ford, inured to the benefit of plaintiffs and interveners, and held in trust by the defendant Wright for them as to their fractional interests?

■ If such be the case, then we must apply the general rule "that cotenants stand in a certain relation to each other of mutual trust and confidence; that neither will be permitted to act in hostility to the other in reference to the joint estate; and that a distinct title acquired by one will inure to the benefit of all." Turner v. Sawyer, 150 U. S. 578, 14 S. Ct. 192, 195, 37 L. Ed. 1189; Bissell v. Foss, 114 U. S. 252, 5 S. Ct. 851, 29 L. Ed. 126; Stevens v. Grand Central Min. Co. (C. C. A.) 133 F. 28; Cedar Canyon Min. Co. v. Yarwood, 27 Wash. 271, 67 P. 749, 91 Am. St. Rep. 841. Title thus acquired by the grantee is held in trust for the other tenants in common as their interests appear and should be enforced by a court of equity.

■ The evidence discloses that the course of conduct of the defendant Wright from the time he became interested in the property until Ford deeded the 9/10 interest to him was such as to indicate that he desired to secure the whole title without proceeding in the manner required by law, as we find him, after receiving a bond and lease for $7,500 from the administrator, attempting to relocate it, and failing in that, to secure an administrator's deed as to plaintiffs' and interveners' interests. Prior to the decision of the state Supreme Court, which was in November, 1923, he and his associates had worked the claims and taken out considerable quantities of ore. As soon as he was informed by his counsel of the decision of the Supreme Court invalidating the administrator's deed, he at once jumped the claims, although they were not at that time open for relocation. It further ap-

pears that at the time the defendant Ford jumped the claims he was indebted to Wright for a doctor's bill, and was told by Wright that he could jump them, which was done, and then Ford deeded 9/10 interest to Wright for a consideration of $100 cash and the cancellation of the doctor's bill. Before Ford completed the location of them, Wright began dealing with him for a reconveyance, which Ford was always willing to do, as he did not have in mind selling them to Wright, but letting him have them back. The consideration was grossly inadequate, which is one of many circumstances going to show an understanding between Ford and Wright that the claims were to be transferred back to Wright. The purpose of the location is shown by his own statement, in which he said, "To let Wright have the claims back." These circumstances and others appearing in the record convinces me that at the time Ford located the claims he and Wright were acting in combination, which deprived the other owners of their interests, and which requires the application of the rule that the conveyance of the 9/10 interest to Wright by Ford inures to the benefit and interest of the plaintiffs and interveners as they appeared before Ford made the location. Stevens v. Grand Central Mining Co., supra. It seems clear that the location of the claims under the circumstances attending the relocation by Ford inured to the benefit of Wright's cotenants, for such a result followed from the fiduciary relation that existed between tenants in common and which prevents Wright from acquiring title to the common property in violation of the covenants that such relationship imposes. Lockhart et al. v. Rollins, 2 Idaho (Hasb.) 540, 21 P. 413; Soule v. Johnson et al., 34 Idaho, 439, 201 P. 834. And therefore the 9/10 interest he acquired came to him burdened with the trust in favor of plaintiffs' and interveners' interests. The fact that neither the administrator nor the heirs of Tormey contributed to the assessment work on the claims will not cause a forfeiture of their interests, because Wright never requested them to do so, as he claimed to be the owner ever since the administrator's deed was made. If he wanted contribution from his cotenants he should have taken steps provided by statute, which authorizes a cotenant to compel contribution from the co-owners by giving notice of forfeiture. 30 USCA § 28; Turner v. Sawyer, supra; Van Sice v. Ibex Mining Co. (C. C. A.) 173 F. 895.

The further contention that Wright and his associates had acquired title to the property prior to the time Ford located it for failure to do assessment work is based upon the theory that the administrator's deed was held to be valid by the state Supreme Court as to a certain interest in Wright, which constituted color of title to the entire property, and that the granting of such a deed and taking possession thereunder did not make Wright a tenant in common with the heirs of Tormey, and that being the case he has held adverse possession for such a length of time as would grant to him title thereto, is not tenable under the record, for, Wright being a cotenant, his possession is the possession of all, so far as it relates to adverse occupancy, and during such period of time one tenant cannot invoke the principle of acquiring the whole title by adverse possession against his cotenants unless there is a complete ouster of possession and no litigation going on between them. If litigation is going on, where the parties are using legal proceedings to effect a settlement, it would be contrary to all principles of equity and at variance with the principles underlying limitations to allow such statutes to run. This principle seems now settled, and no authorities have been called to my attention holding to the contrary. Klumpp v. Thomas (C. C. A.) 162 F. 853. What are the facts relating to the period of time when Wright claimed to have gone into possession and when this suit was commenced?

The administrator's deed, under which Wright claims color of title, was given in August, 1918, and the present suit was commenced in September, 1928. If Wright acquired title by adverse possession it must have happened between those dates, and based upon the conduct of the parties. Immediately after the administrator's deed was given, proceedings were instituted by the heirs in the probate court attacking it, and thereafter appeals to the state district and Supreme courts were taken. During these contests Wright urged the court to sustain the deed. This litigation extended over five years, and was not finally disposed of by the state courts until in 1924, before Ford relocated the claims, which was in July, 1927. Eliminating then the period of time between the date of the deed and the final determination of the state courts as to its invalidity, five years had not elapsed since the controversy had been finally determined and the commencement of this action. Under such circumstances it would be contrary to all legal and equitable principles to forbid the maintenance of this suit because of the lapse

of time while the litigation was going on or under the conduct of the parties. The case should therefore be determined in accordance with the equities which arise from its own conditions.

The defendants in their answer and cross-complaint ask that, in the event plaintiffs and interveners recover an interest in the claims, they account to them for moneys spent in the operation, improvement, and annual assessment work on the claims. As to this contention, plaintiffs and interveners should not be required to contribute to such expense until defendants have proved their account, which should cover receipts and expenses, and therefore, as the present record is unsatisfactory in that regard, the taking of such account is referred to a referee to report to the court fifteen days before the first day of convening of court in October next at Pocatello. Should counsel be unable to agree upon a referee within fifteen days from this date, the court will name one. After the account is so taken and determined by the court, a decree will be entered, decreeing to plaintiffs an undivided ½₁ interest and to interveners an undivided ⅔ interest in and to the mining claims mentioned and described in the plaintiffs' complaint and interveners' answer and complaint, and with costs.