JOHN H. GILES DYEING MACHINE COMPANY, Respondent, *v.*
KLAUDER-WELDON DYEING MACHINE COMPANY, Defendant,
Impleaded with HOLLAND S. DUELL and CHARLES H.
DUELL, JR., as Executors, etc., of CHARLES H. DUELL,
Deceased, and Others, Appellants.

Third Department, November 16, 1921.

**Corporations — official misconduct of directors and officers — action
by creditor under General Corporation Law, §§ 90, 91 — sole creditor
need not bring representative action — may maintain action for
full amount of indebtedness — no defense that acts of defendants
were done as stockholders where directors and stockholders same
persons — judgment and return of execution unsatisfied not
required where all assets of corporation transferred to another
corporation — directors jointly and severally liable — notice of
stockholders' meeting served on plaintiff's president personally
not notice to plaintiff — inadvertent presentation of claim to
receiver of corporation to which assets transferred not bar to action.**

In the summer of 1918 the plaintiff, a foreign corporation, sold and transferred
to the defendant corporation its assets and business and received in
payment therefor four promissory notes.   In October of the same year a
notice was served on the stockholders of the defendant corporation of a
stockholders' meeting which was called for the purpose of voting upon a
proposition to change the defendant corporation from a New York
corporation to a Pennsylvania corporation having the same directors and
officers.   A copy of said notice was served on the president of the plaintiff
corporation who at one time had been a stockholder of the defendant
corporation but had sold his stock to one of the defendants at par.   At
the stockholders' meeting of the defendant corporation it was resolved
that the assets, all of which were located in the State of Pennsylvania, should
be transferred to the Pennsylvania corporation which would assume all
the liabilities of the defendant corporation.   The stockholders of the
defendant corporation received proportionate shares of stock in the
Pennsylvania corporation in exchange for their stock in the defendant
corporation with the exception of one stockholder who in exchange for
his shares was given prior lien notes of the Pennsylvania corporation.
This transfer was made before the first note given to the plaintiff fell due.
After the first two notes given to the plaintiff were protested for non-
payment judgment was secured against the defendant corporation and
an execution was returned unsatisfied.   The plaintiff, who was the only
creditor of the defendant corporation, commenced this suit under sections
90 and 91 of the General Corporation Law against the defendant corpora-
tion and the individual directors thereof, who were residents of this State,

to compel the directors to account for their official conduct and to pay to the corporation the value of the property which had been transferred, lost or wasted by or through any neglect or failure on their part to perform their duties.

*Held,* that the plaintiff, being the sole creditor of the defendant corporation, was not obliged to bring a representative action;

That it had the right to maintain this suit in equity for the whole amount of its indebtedness;

That the defendant directors cannot relieve themselves from liability on the ground that the transfer of the corporation's assets was made by themselves as stockholders at a stockholders' meeting;

That the plaintiff was entitled to maintain an action for the full amount of the notes though judgment had not been secured against the defendant corporation for all of them, since a creditor is not required to secure judgment and have an execution returned unsatisfied where it clearly appears that to do so would be useless; furthermore the defendants did not raise that question at the trial;

That the liability of the individual defendants was not limited to the amount of stock which each received from the Pennsylvania corporation, for the defendants are jointly and severally liable;

That the notice of the proposed stockholders' meeting at which the transfer was authorized was not served on the plaintiff, and knowledge on its part cannot be predicated upon the notice which its president received, though he was the principal owner of the corporation;

That the act of the plaintiff's Pennsylvania attorney in presenting a claim to the receiver of the Pennsylvania corporation, which was inadvertently done, after this action was commenced, did not defeat the plaintiff's right to recover herein.

JOHN M. KELLOGG, P. J., and VAN KIRK, J., dissent, with opinion.

APPEAL by the defendants, Holland S. Duell and another, as executors, etc., and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Montgomery on the 4th day of April, 1921, upon the decision of the court rendered after a trial at the Montgomery Special Term.

*Holland S. Duell* [*Edgar T. Brackett* of counsel], for the appellants Holland S. Duell and Charles H. Duell, Jr., as executors, etc.

*Thayer & Van Slyke,* for the appellants W. Sackett Duell and E. George Lavino.

*Christopher J. Heffernan,* for the respondent.

KILEY, J.:

The plaintiff is now, and at all times mentioned herein was, a foreign corporation organized under the laws of the State of Maine. The defendant the Klauder-Weldon Dyeing Machine Company is a domestic corporation organized under the laws of the State of New York. There is in existence another corporation of the same name viz., the Klauder-Weldon Dyeing Machine Company, organized and existing under the laws of Pennsylvania; each of said corporations were and are owned and operated by practically the same persons as stockholders and directors. When referred to hereinafter they will be designated as the New York and Pennsylvania corporations respectively. At the time of the commencement of this action the other defendants, including Charles H. Duell, since deceased, were the principal stockholders and the directors and officers of both of said corporations. Previous to the 26th day of October, 1918, the plaintiff and defendant corporations were engaged in manufacturing and selling similar machinery and product. John H. Giles was the president of and owned nearly all of the stock of the plaintiff corporation. Giles also owned 491 shares of the defendant New York corporation stock, which previous to the 26th day of October, 1918, and on the 10th day of October, 1918, he had sold to the defendant W. Sackett Duell for $49,100, which amount was paid to Giles by giving $38,000 in cash and a note for $11,100. It is important to remember this figure because it is some indication of the value of the assets of the defendant corporation. On the 16th day of October, 1918, the New York corporation prepared and sent out the following notice: "A meeting of the stockholders of the Klauder-Weldon Dyeing Machine Company will be held at the New York office of that company, No. 19 West 44th Street, at eleven A. M. Saturday, October 26, 1918, for the purpose of voting upon a proposition to change from a New York to a Pennsylvania corporation, with the same amount of stock; the assets and liabilities to be transferred from the New York corporation to the Pennsylvania corporation upon issue of their stock for the present $200,000 of stock of this company." John H. Giles received a copy of this notice. Said Giles signed a waiver of notice of special and any adjourned meetings of the

stockholders of the Klauder-Weldon Dyeing Machine Company called for October 26, 1918. This waiver was dated October 23, 1918. The apparent excuse for sending this notice to Giles personally was that when Duell purchased his stock in the New York corporation he put up as collateral security for a balance of $11,100, 100 shares of the stock the title of which was in Duell. The evidence is that Giles received or found in his office a notice for one Keefer who was a stockholder of the New York corporation. Such notice as Giles received and the waiver he signed were personal to himself, and on account of the 491 shares of stock that he had held in the New York corporation. On the 27th day of August, 1918, the plaintiff by an instrument in writing sold and transferred to the defendant New York corporation its assets and business, including good will and patents and unfilled orders, for the expressed sum of $40,000, which amount might be increased or diminished according to inventory of some of the personal property and orders filled or unfilled by the purchaser. On September 1, 1918, the defendant New York corporation, as payment for said purchase price, gave four several promissory notes dated on that day and payable as follows: One for $12,000 payable January 3, 1919; one for $7,000 payable April 1, 1919; one for $7,000 payable July 1, 1919, and one for $7,000 payable October 1, 1919. A fifth note was to have been given for the balance as soon as the exact amount could be determined; that note was never given, the exact amount of which has since been determined and is and was the sum of $16,151.30. The sale was August 27, 1918, as above observed, and the notes dated September 1, 1918, were given in payment for the property and rights transferred in that transaction. The scheduled meeting of the stockholders for October 26, 1918, was held. The officers and directors of the New York corporation at all times mentioned herein previous to January 1, 1919, were Charles H. Duell, E. George Lavino, W. E. H. Bell, W. S. Duell, William C. Keator. H. S. Duell was also a stockholder, not present at the meeting; he and W. S. Duell were sons of Charles H. Duell. All of the Duells were present except H. S. Duell, and for him his brother held a proxy. The director Lavino, who owned 317 shares of the stock, was not present, but the Duells had his proxy. Keator

a director, was represented by proxy. Higgs, a small stockholder and employee of the corporation, was present. This is the only stockholder outside of officers and directors who was present. At all times the Duells owned a majority of the capital stock in both the New York and Pennsylvania corporations, and had a majority in their own names of the stock of the New York corporation at the time of the holding of the meeting of October 26, 1918. At that meeting the following preamble and resolution was duly carried:

" Whereas, this company carries on its business in the State of Pennsylvania, where are located its plants, and does not carry on its business in the State of New York, in which it is incorporated; and Whereas, it will be more convenient and economical to carry on its business if incorporated under the laws of the State of Pennsylvania; and Whereas, this company was once incorporated under the laws of the State of Pennsylvania and its charter is outstanding: Now, therefore, be it

" *Resolved,* That the New York charter be, in due course, surrendered and that this company be incorporated under the laws of the State of Pennsylvania, or assume its old Pennsylvania charter; be it further *Resolved,* That all of the assets of this company including moneys, accounts and bills receivable, machinery, patents, trade marks, good will and rights of every name or nature be transferred to the Pennsylvania corporation, which corporation shall assume all of the liabilities of this company; and be it further

" *Resolved,* That the president and treasurer of this company be and they are hereby authorized and directed to execute all instruments necessary to vest a good and legal title in and to all of its assets in the Pennsylvania corporation; and be it further

" *Resolved,* That each stockholder surrender his stock in this company for an equal amount of stock in the Pennsylvania corporation."

On the 7th day of December, 1918, the New York corporation, without any writing or evidence of transfer, delivered to the Pennsylvania corporation all of the assets of the New York corporation. No action of the board of directors, as a board, was had. It will now be recalled that a portion of the

assets of the New York corporation thus turned over to the Pennsylvania corporation was represented by the $49,100 worth of stock purchased of Giles as a stockholder in the New York corporation. The amount for which the New York corporation was capitalized was $200,000. The defendants admit that the New York corporation at that time was a going corporation and financially able to meet all of its obligations. This property was transferred without other consideration to the New York corporation from the Pennsylvania corporation than the provision in the resolution hereinbefore quoted that it " shall assume all of the liabilities of this company." The capital stock of the Pennsylvania corporation was increased to $350,000, apparently by the property of the New York corporation taken over as aforesaid, and stock of the Pennsylvania corporation was issued direct to the stockholders of the New York corporation, of which the directors Duell received the major part. Director Lavino turned his stock, 317 shares, over to the Pennsylvania corporation and was given prior lien notes for the same. Thus the New York corporation was left with an empty treasury and without business or property to meet its obligations and one of the directors had been given a prior lien on the assets of the Pennsylvania corporation. The next step in the sequence taken by the Duells, they owning a majority of the stock, was to throw the Pennsylvania corporation into the hands of a receiver with the usual restraining order to prevent any creditor seeking redress against it. This proceeding for receivership of the Pennsylvania corporation was taken in the fore part of March, 1919. We now have the history and condition of the New York corporation, which spells insolvency if nothing more, when plaintiff's first note of $12,000 became due January 3, 1919. It was not paid and was protested and so was the second note of $7,000. Plaintiff brought action on both notes against the New York corporation and recovered judgment. Execution was returned unsatisfied. Plaintiff was the only creditor of the New York corporation. It brought this action under the provisions of sections 90 and 91 of the General Corporation Law. Subdivisions 1 and 2 of section 90, applicable here, read as follows:

" 1. Compelling the defendants to account for their official conduct, including any neglect of or failure to perform their

duties, in the management and disposition of the funds and property, committed to their charge.

" 2. Compelling them to pay to the corporation, which they represent, or to its creditors, any money, and the value of any property, which they have acquired to themselves, or transferred to others, or lost, or wasted, by or through any neglect of or failure to perform or by other violation of their duties."

This section gives a cause of action when the above appears against one or more trustees, directors, managers or other officers of a corporation, and as provided in section 91 to a creditor, except when it has to be brought by the Attorney-General; it permits this plaintiff to maintain an action. While this action was pending judgment on the remaining two notes was had by plaintiff. This action is in equity and was brought for the whole amount of plaintiff's indebtedness. The complaint is against the directors and officers and charges neglect and omission of duty, loss and waste of assets and failure to comply with the law in their capacity as directors. Charles H. Duell died during the pendency of the action, and by stipulation his executors were substituted. Directors Bell and Keator were and are non-residents and by stipulation their names were stricken from the papers. The case was tried before the court without a jury by stipulation; plaintiff had judgment against all of the defendants for the full amount claimed, amounting, with costs, to $55,766.72; all of the defendants have appealed except the New York corporation. Appellants urge that the transfer from the New York corporation was legally made in accordance with the provisions of section 16 of the Stock Corporation Law,* which reads as follows:

" § 16. Voluntary sale of franchise and property. A stock corporation, except a railroad corporation and except as otherwise provided by law, with the consent of two-thirds of its stock, may sell and convey its property, rights, privileges and franchises, or any interest therein or any part thereof to a domestic corporation, engaged in a business of the same general character, or which might be included in the certificate of incorporation of a corporation organizing under any general

---

* Since amd. by Laws of 1920, chap. 396.— [REP.

law of this State for a business of the same general character, and a domestic corporation the principal business of which is carried on in, and the principal tangible property of which is located within a State adjoining the State of New York, may with the consent of the holders of ninety-five per centum of its capital stock, sell and convey its property situate without the State of New York, not including its franchises, to a corporation organized under the laws of such adjoining State, and such sale and conveyance shall, in case of a sale to a domestic corporation, vest the rights, property and franchises thereby transferred, and in case of a sale to a foreign corporation the property sold, in the corporation to which they are conveyed for the term of its corporate existence, *subject to the provisions and restrictions applicable to the corporation conveying them.* Before such sale or conveyance shall be made such consent shall be obtained at a meeting of the stockholders called upon like notice as that required for an annual meeting."

The defendants appealing urge that they acted as stockholders and that they cannot be held liable for any injury suffered by the plaintiff, no matter how flagrant and damaging the result. Under ordinary circumstances, where there is no intention to do other than make the transfer, force is lent to such construction by that particular portion of section 16 which provides for the acquiescence of stockholders holding ninety-five per centum of the stock. The intent of the action taken here must be found from the facts that appear in the record and consideration had in light of the section taken as a whole. In so considering the section with the facts of this case before us, our attention is immediately attracted by the following: " And in case of a sale to a foreign corporation the property sold, in the corporation to which they are conveyed for the term of its corporate existence, *subject* to the provisions and restrictions applicable to the corporation conveying them." The exception refers to the General Corporation Law. Section 5 of the Stock Corporation Law, which is in article 2 of the act in which said section 16 is found, provides: " This article except sections eight, fifteen, sixteen, seventeen and eighteen thereof, shall not apply to moneyed corporations." Section 34 of the General Corporation Law (as amd. by Laws of 1917, chap. 538) provides, so far as pertinent here: " The

affairs of every corporation shall be managed by its board of directors, at least one of whom shall be a citizen of the United States and a resident of this State." This section declares the source of management, while section 28 of the Stock Corporation Law, which is applicable to this defendant corporation, sets a limit to the powers of such management and reads as follows: " The directors of a stock corporation shall not make dividends, except from the surplus profits arising from the business of such corporation, nor divide, withdraw or in any way pay to the stockholders or any of them, any part of the capital of such corporation, or reduce its capital stock, except as authorized by law. In case of any violation of the provisions of this section, the directors under whose administration the same may have happened, except those who may have caused their dissent therefrom to be entered at· large upon the minutes of such directors at the time, or were not present when the same happened, shall jointly and severally be liable to such corporation and to the creditors thereof to the full amount of any loss sustained by such corporation or its creditors respectively by reason of such withdrawal, division or reduction. But this section shall not prevent a division and distribution of the assets of any such corporation remaining after the payment of all its debts and liabilities upon the dissolution of such corporation or the expiration of its charter; nor shall it prevent a corporation from accepting shares of its capital stock in complete or partial settlement of a debt owing to the corporation, which by the board of directors shall be deemed to be bad or doubtful." These sections of the law show how the Legislature has sought to guard the rights of creditors against the tendencies of some corporations through their officers and directors to disregard those rights. These provisions of the statutes create in effect, if not in words, a trust for the benefit of creditors. The liability thus placed· upon those in control of corporations cannot be escaped by any practiced dual relationship, which otherwise could be changed momentarily to suit each occasion. Those in control of corporations are given extended powers and such grant carries with it commensurate responsibility to those dependent upon such officers for protection of their rights and interests. The appellants

here seem to fail to appreciate that responsibility may be predicated upon omission as well as commission. *Darcy* v. *Brooklyn & N. Y. Ferry Co.* (196 N. Y. 99) and cases cited, followed in *Shalek* v. *Jetter* (171 App. Div. 365), is authority for maintaining this action. Appellants have made a fruitless effort to distinguish it from the one at bar; on principle it is the same. Question was raised that the action should have been brought by plaintiff in a representative capacity. It is admitted in the record that plaintiff was the only creditor of the New York corporation. As such it could maintain this action. (*Buckley* v. *Stansfield,* 155 App. Div. 735; affd., 214 N. Y. 679.) As a further ground for reversal of the judgment it is urged that that judgment cannot be sustained, if at all, for a larger sum than the amount of the notes which had been reduced to judgment before this action was commenced. It appears from the pleadings, including defendants' answers, and from the evidence that appellants had stripped the New York corporation of all its assets and business in this State, thereby working a dissolution of the same; had put them beyond the jurisdiction of the courts of this State, and placed first liens on the income of the foreign corporation and its assets in favor of one of its directors, a defendant herein, and that the other defendants had received stock issued to each of them directly from the Pennsylvania corporation; that they did not leave a dollar of money or property with the New York corporation; that an execution had been returned unsatisfied against that corporation; that it was insolvent at the time this action was brought. Is it possible under such circumstances that the claims of this single creditor must all be reduced to judgment against an insolvent corporation before it could sue those who had despoiled it and destroyed it as a solvent, able to pay, going corporation? It was held in *Lilienthal* v. *Betz* (108 App. Div. 222): " The complaint alleging facts which make it impracticable to obtain a judgment against the corporation, any question as to the necessity of alleging that such judgment had been obtained and execution thereon returned unsatisfied is not presented." While the judgment in that case was reversed in 185 New York, 153, the above holding stands, as it was reversed on other grounds. The excuse is complete in this record; the fruitlessness of such

action fully appears; the courts do not require useless efforts to be made which, by the nature of things involved, cannot produce results. The plaintiff was a judgment creditor; the court obtained jurisdiction of the parties; the defendants went to trial without raising the question; no word of evidence was offered by the defendants to impugn or contradict the accuracy of plaintiff's claim or the figures upon which it was based; under such circumstances the question was waived. (*National Tradesmen's Bank* v. *Wetmore,* 124 N. Y. 241; *Hollins* v. *Brierfield Coal & Iron Co.,* 150 U. S. 371.) Appellants further urge that if they are liable in any amount it can only be for the amount of stock that each received from the Pennsylvania corporation. Either by acts of omission in failing to protect plaintiff when this property was destroyed as a fund to pay its debt, or by acts of commission, they actually depleted and destroyed the New York corporation as a going concern, they were responsible for the conditions obtaining. Under the statute and at common law as well each and all of them are jointly and severally liable. (*Saranac & Lake Placid R. R. Co.* v. *Arnold,* 167 N. Y. 368; *Hurd* v. *N. Y. & C. Steam Laundry Co.,* Id. 89; *Bartlett* v. *Drew,* 57 id. 587.) Appellants suggest and even intimate that plaintiff was bound to such redress against the Pennsylvania corporation because in the resolution passed October 26, 1918, it is recited that it shall assume the liabilities of the New York corporation, and further claims plaintiff had notice and that it thereby consented in accordance with the provisions of section 16 of the Stock Corporation Law. In the first place plaintiff did not receive notice that these defendants, in control of the New York corporation, intended to strip this corporation of all its assets and make no provision for paying its debt. Such knowledge cannot be predicated upon the notice which plaintiff's president, Giles, received, being the one intended for Keefer. Notice of the purpose to change from a New York corporation to a Pennsylvania corporation was given, and the stock basis of such change was given, but no other detail. Plaintiff never owned any stock in the New York corporation; plaintiff's president had sold his to Duell and had no interest in the transfer. As creditor he did not have any notice that binds, and it was so found by the trial court

as a question of fact, and upon sufficient evidence. When plaintiff did learn of the transaction, it was not bound to accept the substituted debtor. (*Darcy* v. *Brooklyn & N. Y. Ferry Co.*, 196 N. Y. 99.) One other position is taken by the defendants appealing, viz., that plaintiff had elected to pursue the receiver in Pennsylvania. It seems that after this action was commenced, his Pennsylvania attorney, who had his papers and did business for Giles, presented a claim to the receiver. At that time plaintiff had made its election and had sued defendants. Giles swore that the presentment of the claim was an inadvertence and that plaintiff had no intention to pursue that remedy. The trial court so found and his finding is sustained by the evidence. Defendants say that the Pennsylvania corporation is able to pay. It has not done so, and there is no evidence that it has offered to pay the plaintiff; naturally the question is, why does it not pay this plaintiff? If necessary, the answer could be found in this record.

I see no escape for these defendants from the situation they, for themselves, have created.

The judgment should be affirmed, with costs.

COCHRANE and H. T. KELLOGG, JJ., concur; JOHN M. KELLOGG, P. J., and VAN KIRK, J., dissent.

JOHN M. KELLOGG, P. J. (dissenting):

The individual defendants have been held liable for the New York corporation's debts, under subdivision 2 of section 90 of the General Corporation Law, on the theory that " they have acquired to themselves, or transferred to others, or lost, or wasted, by or through any neglect of or failure to perform or by other violation of their duties," its property, as officers of the defendant corporation. By the unanimous vote of the stockholders of the New York corporation, October 26, 1918, at a meeting duly held for that purpose, they authorized its officers, pursuant to section 16 of the Stock Corporation Law, to sell and transfer to a Pennsylvania corporation, to be formed, the assets of the New York corporation in the State of Pennsylvania, in consideration of which the transferee was to pay all the liabilities of the transferor. The same resolution

of the stockholders provided that each stockholder should turn over to the Pennsylvania corporation, when formed, his stock in the New York corporation and receive stock in the Pennsylvania corporation therefor. All of the property of the New York corporation was situated in the State of Pennsylvania, and its business was transacted there. It was found that a New York corporation could not hold title to real estate in Pennsylvania, and that in other respects it was inconvenient to have the business done by a New York corporation, and for those reasons only the business was changed from the New York to the Pennsylvania corporation. The management, the officers and the business were the same. That statute does not require that the consent of creditors be obtained to the transfer, or that assets must be brought from the adjoining State into the State of New York to meet the claims of creditors here. It proceeds upon the theory that the property being in an adjoining State, the parties interested, including creditors, can suffer no harm by the transfer, and it expressly provides that the property sold shall be vested in the purchasing corporation " subject to the provisions and restrictions applicable to the corporation conveying them." In other words, the sale is absolutely valid, but the title as held by the purchasing corporation is still subject to the provisions of law applicable to the conveying corporation; that is the property remains liable for the just claims of the creditors of the New York corporation. But here the conveyance was expressly made upon the condition that all debts are assumed. There is no basis for concluding that the individual defendants have violated their duty when the acts done were strictly pursuant to this statute. It is true that the transaction assumed a double aspect in that the stockholders of the New York corporation exchanged their stock for stock in the Pennsylvania corporation and at the same time the property of the New York corporation, situated in Pennsylvania, was transferred to the Pennsylvania corporation upon its assuming the payment of all liabilities. The agreement to pay the debts was an ample consideration for the conveyance; it was such a consideration as the plaintiff cannot question. There is no evidence as to the value of the property transferred or the amount of liabilities assumed. The issuing of stock

by the Pennsylvania corporation for the New York stock was not a consideration for the transfer of the physical property, because the stock of the New York corporation was the property of the stockholders and not of the corporation, and the corporation had nothing to sell in that respect. The same is true of the stock of the Pennsylvania corporation; it was not an asset for the payment of its debts. It purchased the stock in the New York corporation and issued its stock in place of it. The stock is the mere equity remaining after the debts are paid, and, as we have said, was not an asset to which the creditors could have recourse, except the Pennsylvania corporation, by purchasing the stock of the New York corporation, held it, and now holds it, as an asset, if it has any value. The property in Pennsylvania was, therefore, dedicated, by the agreement itself, as a trust fund for the payment of the debts. The record can be read from end to end and there is not a scintilla of evidence tending to show that the defendants acted fraudulently or in bad faith or in any other way than for the best interests of the corporations they represented. The fact that each stockholder received more stock in the Pennsylvania corporation than he had in the New York corporation, all sharing *pro rata*, did not prejudice the plaintiff nor benefit the defendants. The stockholders owned the New York corporation in certain proportions, and, after the transaction was consummated, they owned the Pennsylvania corporation in the same proportions. No gain could come to them, and it was immaterial whether the proportionate share of a stockholder in the corporation was represented by one share of stock or by one share and a fraction, so long as they shared *pro rata* in the excess. (*Towne* v. *Eisner*, 245 U. S. 418.) No individual defendant could, under any circumstances, have gained anything by the transaction for himself, except so far as the change in the manner of doing business, and in the charter of the corporation, advanced the interests of the corporation itself. No officer received anything of value for or on account of the corporate assets. There being no tangible property of the New York corporation in this State, if the sale had not taken place it would have been necessary for the plaintiff to go to Pennsylvania and collect its debts at the

place where the only assets of the corporation were found. The change in the charter has not prejudiced it, but by the assumption of its debts the consolidation and perfection of the title of the corporation to its assets have improved its condition, and it has no possible grievance. The plaintiff, therefore, has suffered no possible wrong and there is no basis in the evidence for the damages awarded.

Apparently the decision was based, in great part, upon a misunderstanding of *Darcy* v. *Brooklyn & N. Y. Ferry Co.* (196 N. Y. 99). There all the tangible property of the corporation was transferred to another corporation, the directors receiving in payment therefor the bonds of that corporation, which they divided among themselves, leaving the creditors to shift for themselves. The directors had taken the very property which the creditors were entitled to, and it needs no argument to say that they were liable to respond for the bonds they received. That case proceeds upon the theory that by the sale of all the property of the corporation they practically put the corporation out of business, not winding it up in the manner contemplated by law, and they held without consideration the property of the corporation which should go to its creditors. It was a clear violation of their duty to dispose of all the assets of the corporation, taking the proceeds of the sale to themselves and leaving the creditors unprotected, and the case fell squarely within the statute which is now represented by section 90 of the General Corporation Law. There was no attempt to comply with section 16 of the Stock Corporation Law, or any like provision; it was a bold attempt to appropriate the property of the corporation to the directors to the prejudice of the creditors. Here the proceeding was strictly according to the terms of the statute, and, therefore, cannot be held unlawful, and was for the best interests of all concerned.

If we should assume, however, that the transaction did not take place pursuant to section 16 of the statute, the position of the plaintiff is not improved. Upon the facts it is plain that the plaintiff had full knowledge, and assented to the transfer, accepted the new corporation as its debtor and did business with it pursuant to its contract with the New York corporation. The plaintiff duly assigned its patents, a part of

the consideration of the notes in question, to the Pennsylvania corporation, and forwarded them to it pursuant to the agreement it had made with the New York corporation, and, after the receivership, it presented its claim to the receiver, and filed a formal appearance in the receivership proceedings.

After the transfer the corporation carried on its business in the same manner and by the same officers as theretofore, the only change being that the corporation was doing business under a Pennsylvania charter instead of a New York charter. It, however, acquired new property and enlarged its business. It was found, however, that the war was having an unfavorable effect upon the business. The corporation could not get material for the manufacture of its machines, and sales fell off, and it sought to serve the country and make a profit by manufacturing certain things for the government. The expense of preparation for such manufacture was very great, and when the armistice came the market for the things it was manufacturing suddenly ceased, with the result that it had not the ready cash with which to pay all of its debts at once, and took proceedings which many other solvent corporations were taking at the time, and on March 14, 1918, the United States District Court appointed a receiver of its property, to conserve its property and business. The proceedings were based upon the allegation that the corporation was entirely solvent and that the proceeding was instituted to save its assets and business, and on December 15, 1919, by order of the said court, the receivership was vacated and the property restored to the corporation, and it has since been carrying on its usual business, and there is no suggestion that it is insolvent or unable to pay its debts. We have seen that the same business was carried on, and by the same officers, after the change in the corporate character was brought about. If there had been no change in its corporate character, undoubtedly the conditions existing would have caused a temporary receivership in the Federal courts, of the New York corporation, and its property would have been preserved by the order of the court and the plaintiff would have been delayed in enforcing its claim, so that the receivership, and its incidents, were not caused by the change in the charter, but by the general business conditions of the country. This action was brought

November 4, 1919, and its pendency is the only reason suggested why the plaintiff's claims have not been presented to the corporation for payment and payment made. There is no suggestion that it could not enforce payment in the Pennsylvania courts.

I favor reversal and dismissal of the complaint.

VAN KIRK, J., concurs.

Judgment affirmed, with costs.