John COLEMAN, Plaintiff-Appellant,

v.

GOLKIN, BOMBACK & CO., INC., a corporation and Saul Golkin, Defendants-Appellees.

No. 938, Docket 77-7002.

United States Court of Appeals, Second Circuit.

Argued April 27, 1977.

Decided Sept. 9, 1977.

Stanley A. Walton, III, Chicago, Ill., for plaintiff-appellant.

Richard L. Gold, New York City, for defendants-appellees.

Before MANSFIELD, Circuit Judge, and SMITH* and PALMIERI,** District Judges.

RUSSELL E. SMITH, District Judge:

From the findings of the district court, amply sustained by the evidence, it appears that plaintiff Coleman, by reason of his services for and agreements with Divine & Fishman, Inc., a New York brokerage firm, became entitled to 10% of an option held by Divine & Fishman, Inc. to purchase, at $2.00 per share, 50,000 shares of the stock of Gellman Manufacturing Company. Initially, Coleman's rights rested in an oral agreement fixing the terms of his compensation. The oral agreement was reduced to writing in a document entitled "Nominee Agreement" by which Divine & Fishman, Inc. acknowledged that it held 10% of the option for the benefit of Coleman. Divine & Fishman, Inc. reserved the right to exercise the option and to hold and sell the Gellman Manufacturing Company stock after the option had been exercised. The Nominee Agreement specifically provided that "Coleman shall be entitled to the net proceeds resulting from the sale of the shares beneficially owned by him." The Nominee Agreement was executed in late 1962 or early 1963, but was dated July 31, 1962, and was executed by Seymour Fishman on behalf of Divine & Fishman. At the time the Nominee Agreement was executed, three other persons, including Saul Golkin, had acquired substantial amounts of the stock of Divine & Fishman, Inc., and the corporate name had been changed to Golkin, Divine & Fishman, Inc. The defendants claimed that the Nominee Agreement was fraudulently predated. The district court rejected these claims of fraud, found that there had been a bona fide compensation agreement between Divine & Fishman, Inc., as employer, and Coleman, as employee, and that Golkin, Divine & Fishman, Inc. was bound by the agreement.

Ultimately Saul Golkin and Milton Bomback acquired the Hal Divine and Seymour Fishman stock, and the corporate name was changed to Golkin, Bomback & Co., Inc. Saul Golkin subsequently acquired the Bomback stock and, with it, a controlling interest in the corporation. The stockholders voted to dissolve the corporation. Most of its assets were sold and the proceeds distributed, but the Gellman option remained in the corporation. In November 1967, Saul Golkin decided to exercise the option, and he discussed the matter with

---

* Chief Judge of the United States District Court for the District of Montana, sitting by designation.

** Of the United States District Court for the Southern District of New York, sitting by designation.

the stockholders. The corporation did not have funds, and Golkin offered the stockholders who were willing to advance their share of the purchase price the right to participate in the option. Coleman did not know and was not advised that the option was to be exercised. Golkin did exercise the option on behalf of Golkin, Bomback & Co. Ultimately the stock was sold at a profit of $16.00 per share, and the profits were distributed to the participating stockholders. Coleman, upon learning that the option had been exercised, demanded his share of the profits.

The district court held Golkin, Bomback & Co., Inc. liable to Coleman in the amount of $80,000.00 but dismissed the action as to Saul Golkin.

█ The district court held that Coleman had no standing to sue under N.Y. Business Corporation Law § 720 (McKinney 1963). We agree with that conclusion. That section reads in part:

(b) An action may be brought for the relief provided in this section, and in paragraph (a) of section 719 (Liability of directors in certain cases) by a corporation, or a receiver, trustee in bankruptcy, officer, director or *judgment* creditor thereof . . .. (Emphasis supplied.)[1]

The authorities relied upon by Coleman[2] were all decided prior to the enactment of N.Y. Business Corporation Law § 720, and were decided under statutes such as N.Y. General Corporation Law §§ 60 and 61 (McKinney 1943), which used the word "creditor" rather than the words "judgment creditor." Without any support in the New York case law, we do not feel free to write the word "judgment" out of N.Y. Business Corporation Law § 720.

█ We agree with the district court's conclusion that Saul Golkin was not guilty of tortious interference with Coleman's contract. That conclusion was based on findings of fact, having support in the evidence, that Golkin's conduct was not predatory, malicious, or against the interests of the corporation, nor was it without legal or social justification.[3]

The district court indicated in a footnote that the plaintiff had not contended that Golkin was guilty of conversion. Coleman then sought to amend the complaint to conform to the evidence and moved for a new trial and rehearing. The motions were summarily denied, and Coleman urges that the denial was error.

There was no conversion. Coleman had at the most a right to exercise 10% of the option. The Nominee Agreement provided that Divine & Fishman, Inc. should be the record owner of the shares and that it could make "unilateral decisions with respect to the exercise of said option and/or the sale of shares acquired . . . ." Under these circumstances, Coleman had no possessory interest in the shares prior to their sale, and without such an interest, he had no claim for conversion. *McCoy v. American Express Co.,* 253 N.Y. 477, 171 N.E. 749 (1930). In the absence of evidence of a conversion, the errors of the district court, if any, in denying a motion to amend could not be prejudicial.

█ It is our opinion that the Nominee Agreement created a trust. A trust is defined as "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to

---

**1.** The Business Corporation Law was enacted in 1961, and § 103 of it made the Business Corporation Law rather than the General Corporation Law applicable to corporations such as Golkin, Bomback & Co.

**2.** *Bonhart v. Braunwarth,* Sup., 81 N.Y.S.2d 739 (Sup.Ct., N.Y.Co.1948); *Levy v. Paramount Publix Corp.,* 149 Misc. 129, 266 N.Y.S. 271 (Sup.Ct., N.Y.Co.1933); *aff'd,* 241 App.Div. 711, 269 N.Y.S. 997 (1st Dept. 1934), *aff'd,* 265 N.Y. 629, 193 N.E. 418 (1934); *John H. Giles Dyeing Machine Co. v. Klauder-Weldon Dyeing*

*Machine Co.,* 198 App.Div. 564, 190 N.Y.S. 726 (3d Dept. 1921), *rev'd on other grounds,* 233 N.Y. 470, 135 N.E. 854 (Ct.App.1922); *Steele v. Isman,* 164 App.Div. 146, 149 N.Y.S. 488 (1st Dept. 1914).

**3.** *Rothschild v. World-Wide Automobiles Corp.,* 24 App.Div.2d 861, 264 N.Y.S.2d 705 (1st Dept. 1965), *aff'd,* 18 N.Y.2d 982, 278 N.Y.S.2d 218, 224 N.E.2d 724 (1966); *Navarro v. Fiorita,* 271 App.Div. 62, 62 N.Y.S.2d 730 (1st Dept. 1946), *aff'd,* 296 N.Y. 783, 71 N.E.2d 468 (1947).

equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." Restatement (Second) of Trusts § 2 (1959). The legal title to the option was in the corporation; the equitable title was in Coleman. By the agreement, the corporation undertook equitable duties with respect to Coleman's interest in the option.[4] The three elements necessary to the existence of a trust were present, i. e., a designated beneficiary, a designated trustee, and an identifiable property. No particular words are required. *See In re Estate of Fontanella,* 33 App.Div.2d 29, 304 N.Y.S.2d 829 (1969).[5]

■ When the corporation decided to exercise the option, it had no duty to advance Coleman's share of the purchase price, but it did have a duty to notify him that the option would be exercised and give him an opportunity to advance his share of the funds. The duties of the corporate trustee here could not be less than they would have been had the corporation and Coleman been cotenants. It is uniformly held that a cotenant acquiring an outstanding title holds the same for the benefit of his cotenants upon a seasonal contribution by them of their respective proportions of the necessary expense. *Turner v. Sawyer,* 150 U.S. 578, 14 S.Ct. 192, 37 L.Ed. 1189 (1893); *Jemzura v. Jemzura,* 36 N.Y.2d 496, 369 N.Y.S.2d 400, 330 N.E.2d 414 (1975); *Sweetland v. Buell,* 164 N.Y. 541, 58 N.E. 663 (1900).

■ It follows that, when the option was exercised, the corporation held 10% of the stock in trust for Coleman, at least until he was given an opportunity to contribute to the purchase price of the stock, and the question then arises whether the distribution of the stock to Saul Golkin and the other stockholders was sufficient to cut off Coleman's interest. A distribution of assets by a corporation is not a sale, and the stockholders receiving the assets are not bona fide purchasers.[6] If the property in the hands of the corporation is burdened with a trust, it remains burdened with the trust when distributed to the corporate stockholders whether the stockholders have notice or not.[7]

■ We are of the opinion that the court's findings of fact required the legal conclusion that Golkin, Bomback & Company was a trustee of the 10% of the stock acquired by the exercise of the Gellman option and that, upon the distribution of the stock, the stockholders took it, subject to the trust. The trust theory was not presented to the trial court, and if it is presented by the briefs on appeal, the presentation is most oblique. The factual contentions necessary to the existence of the trust are, however, presented by the pleadings and were resolved in the district court's findings. The determination of the legal relationship created by the facts found is solely a problem of law. While courts of appeal have power to make such orders "as may be just under the circumstances",[8] they will not usually reverse a trial court on the basis of issues not raised below. The rule, however, is not inflexible. *Hormel v. Helvering,* 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941), and the problem here being one of law only, we believe that, under the

---

4. "If the transferor manifests an intention to impose a duty upon the transferee to deal with the property for the benefit of a third person and to give to the third person the beneficial interest therein, a trust is created . . . ." Restatement (Second) of Trusts § 10b (1959).

5. Where the settlor and the trustee are the same person, there is no necessity of a delivery, which is stated in *In re Estate of Fontanella,* 33 A.D.2d 29, 304 N.Y.S.2d 829 (1969), to be a fourth requisite. *Orton v. Tannenbaum,* 194 App.Div. 214, 185 N.Y.S. 681 (1920). *See* Restatement (Second) of Trusts § 18 (1959).

6. *See Plastic Contact Lens Co. v. Frontier of the Northeast, Inc.,* 324 F.Supp. 213 (W.D.N.Y. 1969), to the effect that, upon dissolution of a corporation and distribution of assets of a corporation to stockholders, the stockholders hold such assets in trust for the creditors.

7. (a) Restatement (Second) of Trusts § 289 (1959).

   (b) Saul Golkin, according to his own testimony, had knowledge of the option.

8. 28 U.S.C. § 2106.

circumstances of this case, justice requires that the case be remanded to the district court with directions to determine what part if any of the 10% of the stock subject to Coleman's rights was ultimately received by Saul Golkin, and to enter judgment against him for that difference between the option price and the selling price of that part of the stock.