JOSEPH CONTE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Conte v. Commissioner
Docket No. 15252-79.
United States Tax Court
T.C. Memo 1981-571; 1981 Tax Ct. Memo LEXIS 173; 42 T.C.M. (CCH) 1296; T.C.M. (RIA) 81571; September 30, 1981. Joseph Conte, pro se. Jack Scher, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency in petitioner's Federal income tax for the calendar year 1977 in the amount of $ 1,852.63. Concessions having been made, the issues remaining for decision are: (1) whether petitioner is entitled to deduct automobile expenses incurred in traveling between his residence and his place of employment each working day; (2) *174 whether petitioner is entitled to a deduction for expenses associated with rental real estate in excess of his pro rata ownership interest therein; and (3) whether petitioner's rental real estate was held for the production of income for all, or only a portion, of 1977. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner resided in Bronx, New York, at the time the petition herein was filed. He timely filed an individual income tax return for 1977 with the Internal Revenue Service at New York, New York. 1. Traveling Expense
Petitioner is an electrical technician. On or about September 9, 1976, he was hired by Eastern Design Company (hereinafter Eastern), a supplier of technical manpower, to work in the product design department of Union Carbide Corporation (hereinafter Union Carbide) located in Rye, New York, commencing January 1, 1977. Petitioner remained an employee of Eastern, which paid him, and which, in turn, was paid for his services by Union Carbide. Initially petitioner was informed that his employment would last two to three months. After that time his supervisor told him that he would be needed an additional two to six *175 months. In November and December 1977, petitioner was handed independent internal memoranda of Union Carbide, each of which referred to him as a temporary employee. He continued to work at Union Carbide until December 16, 1977, at which time he voluntarily left the employ of Eastern (and Union Carbide). Petitioner's resignation from Eastern was prompted by his belief that he would soon be laid off and by an offer of more money elsewhere. It was not uncommon for petitioner to work for only short durations at any given job. He equated his employment situation with that of a construction worker. For a period of approximately 10 years prior to the trial in the instant litigation petitioner held 12 different jobs. His typical job lasted six months to a year. Although he had worked for various employers during this period, he had twice been employed by Eastern at Union Carbide plants. For six months in 1974 petitioner worked at Union Carbide's plant in Tarrytown, New York, and for six weeks in 1975 petitioner worked at their plant in Binghamton, New York. Throughout 1977 petitioner resided at 231 East 237th Street, Bronx, New York. Each working day he drove his personal *176 automobile to and from work in Rye, New York. The driving distance between his home and his employment was 14 miles. The total unreimbursed expenses incurred by petitioner in traveling to and from his work in Rye, New York during 1977 was $ 1,313.20. 2. Rental Expense
During 1977 petitioner, his mother, and his brother were the sole joint owners of a two-family residential dwelling located at 231 East 237th Street, Bronx, New York. Prior to and throughout 1977 petitioner resided in one-half of the above-described premises with the members of his family. The other one-half of the house (hereinafter the apartment) was the subject of a written leasehold agreement, at a monthly rental of $ 230, for the period from October 1, 1976 through September 30, 1977. During 1977 expenses were incurred relative to the apartment in the amount of $ 4,375.93, [1] of which petitioner paid 65 percent. On July 31, 1977, the tenant who had been leasing the apartment voluntarily terminated his occupancy thereof. To that point he had paid only $ 1,380 in rent for 1977. Furthermore, *177 the tenant left the apartment in need of extensive repairs. There were holes in the doors and walls, air-conditioner covers were missing or damaged, blinds were missing, plumbing fixtures were damaged, and lighting fixtures were removed--exposing damaged wiring. From the time the tenant quit the premises until the end of 1977, petitioner made no attempt to relet the apartment. In fact, he refused to allow a broker to list the premises. He immediately began to repair the damaged apartment on weekends, which took "a couple of months." It was his intention to repair the property and then sell it, which he believed would be easier if no tenant were in occupancy. The owners of the apartment did not occupy it for the remainder of 1977. At the time of trial herein (March 23, 1981) petitioner and his family still owned the premises and the apartment had been converted to their personal use. On his return for 1977, petitioner deducted $ 1,313.20 representing unreimbursed expenses incurred in traveling to and from worksites in Rye, New York, and his residence in Bronx, New York. He also deducted amounts actually paid by him throughout all of 1977 and associated with the rental apartment.
*178 Respondent has determined that petitioner is not entitled to any deduction for traveling expenses, and that he may deduct only one-third of the expenses associated with the rental apartment and incurred during the first seven months of 1977. OPINION 1. Travel Expenses
We have held that automobile expenses in commuting between one's residence and a temporary job (even outside the taxpayer's normal employment area) are not deductible. Turner v. Commissioner, 56 T.C. 27 (1971), vacated and remanded on respondent's motion by an unpublished order (2d Cir., Mar. 21, 1972). However, in the instant litigation, as has been his recent practice, respondent has chosen not to rely on this favorable precedent. See McCallister v. Commissioner, 70 T.C. 505 (1978); Norwood v. Commissioner, 66 T.C. 467 (1976). Instead, respondent has chosen to frame the issue in terms of whether petitioner's employment at Union Carbide in Rye, New York, was temporary or indefinite. [2] In his brief respondent has conceded that if we determine petitioner's employment to be temporary then petitioner is entitled to deduct his transportation expenses under *179 section 162(a), I.R.C. 1954. Cf. McCallister v. Commissioner, supra.After our examination of all of the facts presented, we are of the opinion that petitioner's employment during 1977 was in fact temporary. Temporary employment is that type of position which can be expected to last only for a short period of time. McCallister v. Commissioner, supra. This expectation of temporariness must have existed at the time the job is accepted and the employment must not have become indefinite in fact as it developed. Commissioner v. Peurifoy, 254 F.2d 483 (4th Cir. 1957), affd. per curiam 358 U.S. 59 (1958). The determination of whether a given employment relationship is temporary or indefinite must be made upon consideration of all the facts and circumstances presented since there are no determinative elements or rules of thumb. Commissioner v. Peurifoy, supra; Norwood v. Commissioner, 66 T.C. 467 (1976). Actual duration of one's employment, although probably the most persuasive indication *180 of temporariness, is not conclusive. [3] Other important factors include the taxpayer's reasonable expectation of duration at the time of acceptance of employment, the employer's expectations of duration, and past employment experience. In the instant case petitioner was hired by Eastern to work at a Union Carbide plant for approximately two to three months. After that period he was told that his services would be needed for an additional two to six months. In fact, it lasted almost nine more months, when he left because another job opportunity had arisen at a time he feared being laid off. Clearly, petitioner's expectation at the inception of his employment (and as it progressed) was that he would be needed for only a relatively short period. Not only had he been told this by Eastern, but he was specifically termed a temporary employee by Union Carbide in internal memoranda handed to petitioner. This was in conformity with petitioner's past experience, i.e., 12 jobs in 10 years, 2 of which were at Union Carbide plants while employed by Eastern (one for 6 months and one *181 for 6 weeks). Collectively, these facts indicate that for the 11-1/2 months petitioner worked at Union Carbide during 1977 he was temporarily, not indefinitely, employed, and we so hold. Thus, petitioner is entitled to deduct his travel expenses incurred in relation to that employment in 1977. 2. Rental Expense
Petitioner maintains that because he paid 65 percent of the expenses associated with the rental apartment he is entitled to deduct the entire amount paid. Respondent argues that he is only entitled to a deduction for his pro rata interest in the property because under New York law petitioner is entitled to reimbursement (contribution) from the other joint tenants for their pro rata interest in the property. [4] We agree with respondent. Under New York law, absent proof to the contrary, cotenants are presumed to hold equal interests in the subject property. Johnson v. Depew, 33 A.D. 2d 645, 305 N.Y.S. 2d 243 (1969). *182 Additionally, contenants are liable for their proportionate share of the expense of maintaining jointly owned property and, to the extent one cotenant pays more than his proportionate share of such expenses, he is entitled to contributions from the other owners. Coleman v. Golkin, Bomback, & Co., 562 F.2d 166, 169 (2d Cir. 1977). It is well settled in this Court that expenses for which there exists a right of reimbursement are not "ordinary and necessary," and thus are not deductible. See Levy v. Commissioner, 212 F.2d 552 (5th Cir. 1954); Estate of Boyd v. Commissioner, 28 T.C. 564 (1957). Petitioner has made no effort to rebut that he owned only a one-third interest in the rental apartment. He is entitled to reimbursement from his mother and brother for the amounts paid by him for expenses of the apartment to the extent such amounts exceed one-third of the total. Consequently, he is not entitled to deduct amounts paid by him to the extent they exceed his share of the apartment expenses. The final issue presented is at what point, if at all, during 1977 the rental apartment ceased to be held as business property, or property *183 held for the production of income. Respondent contends that upon the voluntary termination by the tenant on July 31, 1977, petitioner withdrew the rental property from the stream of commerce so that it was no longer held for the production of income. Petitioner maintains that during 1977 the property was at all times to be either rerented or sold. Section 212(2), I.R.C. 1954, provides that a deduction will be allowed for all ordinary and necessary expenses incurred in the management, conservation, or maintenance of property held for the production of income. If so held then a deduction will be allowed notwithstanding that the property is currently unproductive or held for sale at a profit. Sec. 1.212-1(b), Income Tax Regs. There is no question that petitioner's apartment was held for the production of income while occupied by the tenant. It is equally clear that at the time of trial the apartment was used by petitioner solely for personal purposes. The issue therefore is at what point in between did petitioner withdraw the apartment from the stream of commerce. We believe it was after 1977. When the tenant left, two months prior to the termination date of the lease, he left *184 the apartment in a rendown and damaged condition. Petitioner immediately began to repair the premises in his spare time, with the intent to relet when the apartment was again habitable. Soon thereafter he decided to sell the premises. It was not reasonable to relet prior to completion of the repairs, and he refused to relet after he made his decision to sell. This was due to his belief that a tenant in occupancy would complicate a possible sale. Neither petitioner nor the other owners used the apartment for the remainder of 1977 for personal purposes. However, at no point since 1977 has petitioner sold or leased the premises. We find the evidence on this issue to be almost equally weighted in favor of, and against petitioner's assertions. However, because of petitioner's honest and intelligent testimony at trial, we find in his favor. Although we cannot say at precisely what point petitioner converted the apartment to personal use, we are of the opinion that it was not until some time after 1977. Accordingly, we hold that petitioner has carried his burden of proof (see Rule 142(a), Tax Court Rules of Practice and Procedure) that the apartment was held for the production *185 of income within the meaning of section 212(2), I.R.C. 1954. Decision will be entered under Rule 155. Footnotes
1. The parties have stipulated that these expenses were incurred and paid throughout the year 1977.↩
2. See also Neal v. Commissioner, T.C. Memo. 1981-407↩, footnote 2.
3. See Blankenship v. Commissioner, T.C. Memo. 1979-366↩ (17 months held temporary).
4. Respondent has conceded that petitioner is entitled to deduct real estate taxes and mortgage interest to the extent paid by him as he is jointly and severally liable with respect to these obligations. Consequently, those expenses are not in issue.↩